PEOPLE v OHLINGER

Docket No. 118049. Submitted January 18, 1990, at Detroit. Decided
     May 7, 1990.

     Police officers of the City of Troy, after receiving a complaint that
     a motorist had crashed his automobile into a homeowner's
     mailbox and parked van, arrested James F. Ohlinger without a
     warrant at his home, which the officers entered through an
     unlocked door after they observed Ohlinger to be asleep or
     unconscious and bleeding from the face. The officers also sum-
     moned the homeowner who had filed the complaint to identify
     Ohlinger before the arrest. Ohlinger was charged in the 52nd
     District Court with violating City of Troy ordinances proscrib-
     ing operating a motor vehicle while under the influence of
     intoxicating liquor and leaving the scene of an accident. Defen-
     dant filed a motion to suppress evidence gathered after the
     police officers' entry into his home. The district court denied
     the motion. On appeal, the Oakland Circuit Court, Gene
     Schnelz, J., reversed the district court. The people appealed by
     leave granted.

          The Court of Appeals held:

          1. Panels of the Court of Appeals have split on the issue
     whether the statute allowing the breaking and entering of an
     inner or outer door of a building for the purpose of making a
     felony arrest without a warrant when the police are refused
     admittance, MCL 764.21; MSA 28.880, applies to a misde-
     meanor arrest without a warrant in a person's private home. If
     it does, the misdemeanor arrest in this case did not meet the
     requirements of the statute as the facts indicate that the police
     were not refused admittance, but that defendant was merely
     unresponsive to the officers' announcement of their presence.

          2. Concern about the physical safety of an arrestee is not an

REFERENCES

Am Jur 2d, Arrest §§ 26, 86, 89; Criminal Law §§ 802, 803.

Police officer's power to enter private house or inclosure to make
     arrest, without a warrant, for a suspected misdemeanor. 76
     ALR2d 1432.

Admissibility of evidence as to extrajudicial or pretrial identifica-
     tion of accused. 71 ALR2d 449.

exigent circumstance which is sufficient to justify a misdemeanor arrest without a warrant inside the arrestee's home.

3. The arrest in this case cannot be justified on the basis of the statute which authorizes a felony arrest without a warrant while in fresh pursuit, MCL 780.105; MSA 1286(5). That statute, by its own terms, applies to felony arrests only.

4. The homeowner's identification of defendant was not a reasonable police practice as there was no likelihood that the homeowner would be unable to identify defendant unless identification was made promptly. The identification procedure in this case did not fit within the recognized exception for prompt, on the scene identification of criminal suspects to the general rule that counsel must be present at a corporeal identification procedure.

Affirmed.

1. ARREST — MISDEMEANORS — WARRANTLESS ARREST — FORCED ENTRY — PRIVATE HOMES.

Panels of the Court of Appeals have split on the issue whether the statute allowing the breaking and entering of an inner or outer door of a building for the purpose of making a felony arrest without a warrant when the police are refused admittance applies to a misdemeanor arrest without a warrant in a person's private home (MCL 764.21; MSA 28.880).

2. ARREST — MISDEMEANORS — WARRANTLESS ARREST — EXIGENT CIRCUMSTANCES — CONCERN FOR ARRESTEE'S PHYSICAL SAFETY.

Concern about the physical safety of an arrestee is not an exigent circumstance which is sufficient to justify a misdemeanor arrest without a warrant inside the arrestee's home.

3. CRIMINAL LAW — CORPOREAL IDENTIFICATION — RIGHT TO COUNSEL.

A criminal suspect is entitled to the presence of counsel at a corporeal identification procedure; an exception is recognized in the case of a prompt, on the scene corporeal identification within minutes of a crime where there is a likelihood that the person making such an identification would be unable to do so other than by such procedure.

*Peter A. Letzmann,* City Attorney, and *Norma J. Godre,* Assistant City Attorney, for the people.

*Richard J. Levine,* for defendant.

Before: HOLBROOK, JR., P.J., and WAHLS and T. M. BURNS,* JJ.

HOLBROOK, JR., P.J. The people appeal by leave granted from an order of the Oakland Circuit Court suppressing evidence seized following defendant's arrest without a warrant for two misdemeanor violations under City of Troy Ordinances, operating a motor vehicle while under the influence of intoxicating liquor and leaving the scene of a personal injury accident. We affirm.

Officer Brad Dalton of the Troy police was called to the scene of an accident by a homeowner, Mr. King, who informed him that an unidentified driver had crashed into a mailbox and van and then left the scene without stopping. Mr. King provided a description of the car and a license plate number. He also told Officer Dalton that the man in the car drove away slowly, holding his head as if he were injured. Officer Dalton ran a check on the license plate number and received the address of the person to whom the car was registered.

Officer Dalton proceeded to the address and observed a vehicle matching the description given him by Mr. King parked in the driveway. The vehicle had damage to its front end. He knocked on the front door of the residence but received no response. He had the police dispatcher obtain the phone number for the residence and call. Although Officer Dalton could hear the phone ringing, there was no response from inside the house. Officer Dalton shined his flashlight through the front window but observed nothing.

At this point, a second officer arrived at the scene. While he continued knocking on the front

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

door, Officer Dalton proceeded around the house, shining his light into a bedroom window. There he observed the defendant, either unconscious or asleep, on the bed and bleeding from the face. He tried to rouse the defendant by beating on the window, yelling and shining his flashlight into defendant's face, but to no avail.

It was at this point, Officer Dalton testified at the evidentiary hearing, that he concluded the defendant could be seriously injured. The officers found an unlocked rear door, entered the residence and went directly to the bedroom where the defendant had been observed.

Officer Dalton testified that they were able to wake the defendant after several minutes. They smelled intoxicants on the defendant's breath and concluded that, other than his superficial facial injuries, defendant did not appear to be seriously injured.

At 11:30 P.M., Mr. King arrived at the home and identified the defendant as the person he had observed hit his mailbox and van and drive off without stopping. The officers then proceeded to arrest the defendant.

Following an evidentiary hearing, the district court denied defendant's motion to suppress, holding that the officers' entry into the home was permissible and the arrest without a warrant was authorized by statute. Defendant appealed this ruling to the Oakland Circuit Court where it was reversed.

The people's first issue is whether a police officer may make a misdemeanor arrest without a warrant in a person's home when the officer has reasonable cause to believe the safety of the defendant requires an entry into the home without permission.

It is clear that, by statute, a police officer may

arrest a person without a warrant when the officer has reasonable cause to believe that the person was involved in an accident, and at the time of the accident was operating the vehicle under the influence of intoxicants. MCL 257.625(1); MSA 9.2325(1) and MCL 764.15(1)(h); MSA 28.874(1)(h).

A police officer's authority to enter a building without permission in order to effectuate an arrest is, however, limited by MCL 764.21; MSA 28.880, which provides:

A private person, when making an arrest for a felony committed in his or her presence, or a peace officer or federal law enforcement officer, when making an arrest with a warrant or when making a felony arrest without a warrant as authorized by law, may break open an inner or outer door of a building in which the person to be arrested is located or is reasonably believed to be located if, after announcing his or her purpose, he or she is refused admittance.

Panels of this Court have split over this statute's effect on misdemeanor arrests without warrants. The panel in *People v Strelow,* 96 Mich App 182; 292 NW2d 517 (1980), construed the statute to allow police officers to make entries to arrest for a misdemeanor without a warrant if they announce their purpose and are denied admittance. The panel in *People v Reinhardt,* 141 Mich App 173; 366 NW2d 245 (1985), however, concluded that the statute's silence as to misdemeanors means that police officers are not authorized to enter private homes without consent to make misdemeanor arrests without warrants. Our Supreme Court declined to consider this conflict between the cases. 422 Mich 1206; 369 NW2d 201 (1985).

Although the reasoning of the district court in the case before us is not crystal clear, it appears

that the court interpreted MCL 764.21; MSA 28.880 as at most prohibiting entries to arrest without warrants on misdemeanor charges only when permission to enter is denied. The court then apparently concluded that, since the officers were not refused admittance within the meaning of the statute but were instead never granted admittance, the entry was statutorily proper.

Being "refused admittance" and never being "granted admittance" are two vastly different concepts. Being "refused admittance," as used in the statute, clearly indicates the drafters intended that a response of some sort be made, although a verbal response is not necessary. Among the nonverbal responses which have been found to be equivalent to being "refused admittance" were the sounds of activity within and then silence and the sound of footsteps running away from the door. See, e.g., *United States v Harris,* 391 F2d 384 (CA 6, 1968), and *People v Brown,* 43 Mich App 74; 204 NW2d 41 (1972). Never being "granted admittance," on the other hand, indicates absolute silence, no response at all, verbal or nonverbal, at all to the officers' announcement of their presence.

On the facts of the instant case, we conclude that the total lack of response from within to the officers' presence outside does not meet the "refused admittance" standard set forth in the statute. Defendant's arrest was therefore statutorily invalid.

Turning to the constitutionality of defendant's arrest, we find the arrest to be constitutionally invalid as well. While it is well settled that exigent circumstances may justify arrests without warrants under both the United States and Michigan constitutions, *Welsh v Wisconsin,* 466 US 740; 104 S Ct 2091; 80 L Ed 2d 732 (1984), and *People v Oliver,* 417 Mich 366; 338 NW2d 167 (1983), it is

far from settled that alleged concern about the physical safety of the arrestee is such an exigent circumstance. While other jurisdictions have held that a reasonable belief that a person within the premises needs emergency assistance is an exigent circumstance justifying an entry without a warrant, the person requiring that assistance has always been a victim and not the arrestee.

On the basis of the facts of this case, we are unwilling to declare that the concern about the physical safety of the arrestee is an exigent circumstance sufficient to justify a misdemeanor arrest without a warrant inside a home in Michigan. As the United States Supreme Court noted in *Welsh, supra,* it is difficult to conceive of an arrest without a warrant in a home on a relatively minor underlying offense that would not be unreasonable under the Fourth Amendment.

We also reject the people's argument that the officer was in hot pursuit of the defendant, relying on MCL 780.105; MSA 28.1286(5), the so-called "fresh pursuit" statute. By definition, the statute limits "fresh pursuit" to the pursuit of a felon or suspected felon, neither of which applies to the defendant before us.

A trial court's decision following a suppression hearing will not be reversed unless it is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983). A finding is clearly erroneous when the reviewing court is firmly convinced that a mistake has been made. *People v Smith,* 162 Mich App 534, 539; 413 NW2d 42 (1987). We believe the trial court's denial of defendant's suppression motion was erroneous as none of the recognized exceptions to the warrant requirement were applicable to this case. The circuit court therefore properly reversed the district court's decision.

The people's second issue concerns the propriety of the corporeal identification at the defendant's home without counsel. The people argue it was proper because such confrontation was a reasonable police practice, permitting the police to immediately determine whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest or merely an unfortunate victim of circumstance. We disagree.

The rationale behind the prompt, on the scene corporeal identification within minutes of a crime exception to the general rule that a defendant is entitled to have counsel present during identification does not apply to the facts in this case. There was already a reasonable likelihood that defendant was the driver of the car that drove across the Kings' property. There was no reason to believe that Mr. King would be less able to identify defendant the following day than he was that night. Upon these facts, such an identification cannot be deemed to be a reasonable police practice.

Affirmed.