CITY OF TROY v OHLINGER

Docket No. 89177. Argued April 2, 1991 (Calendar No. 2). Decided
September 10, 1991.

James F. Ohlinger was arrested in his home for driving under the
influence of alcohol and leaving the scene of a personal injury
accident after a police officer, investigating a nearby automo-
bile accident, entered the home without a warrant, believing
Ohlinger to have been involved in the accident and to be
seriously injured. The defendant moved in the 52-4 District
Court for a declaration that the arrest was unlawful and to
suppress all evidence obtained as a result of the entry. The
court, Dennis C. Drury, J., denied the motion. The Oakland
Circuit Court, Gene Schnelz, J., reversed, ruling the entry and
arrest unlawful and directing that all evidence be suppressed.
The Court of Appeals, D. E. HOLBROOK, JR., P.J., and WAHLS
and T. M. BURNS, JJ., affirmed (Docket No. 118049). The city
appeals.

In a unanimous opinion by Justice LEVIN, the Supreme Court
*held:*

A police officer may enter a home without a warrant upon
the reasonable belief that a person inside may be seriously
injured. Because the entry in this case was proper, absent
another reason for exclusion, evidence obtained in the home is
admissible.

1. A police officer may enter a dwelling without a warrant
where it is reasonably believed that a person inside is in need
of medical assistance. The entry must be limited to the reason
for its justification, and the officer must be motivated primarily
by a perceived need to render assistance and may do no more
than is reasonably necessary to determine whether assistance
is required and to render it. In this case, on the basis of
information obtained from an eyewitness of the accident scene
and the inability to determine, without entry, whether the
defendant was injured, the police were justified in conducting

REFERENCES

Am Jur 2d, Searches and Seizures § 44.
See the Index to Annotations under Emergencies; House and Home;
Search and Seizure.

further investigation as part of the community caretaker function. Their investigation did not exceed the scope of an investigation appropriate under the circumstances.

2. Once lawfully inside a residence, an officer may make an arrest without a warrant that is authorized by law. In this case, the arrest was lawful. The officer had probable cause to believe that the defendant had violated an ordinance corresponding to a statute. Absent another reason for exclusion, the evidence obtained in the defendant's home is admissible.

Reversed and remanded to the district court.

183 Mich App 639; 455 NW2d 715 (1990) reversed.

SEARCHES AND SEIZURES — ARRESTS — WITHOUT WARRANTS — MEDICAL EMERGENCIES.

A police officer may enter a dwelling without a warrant where it is reasonably believed that a person inside is in need of medical assistance; the entry must be limited to the reason for its justification, and the officer must be motivated primarily by a perceived need to render assistance and may do no more than is reasonably necessary to determine whether assistance is required and to render it; once lawfully inside a residence, the officer may make an arrest without a warrant that is authorized by law; absent further reason for exclusion, evidence obtained in the dwelling is admissible (US Const, Am IV; MCL 257.625, 764.15[1][h]; MSA 9.2325, 28.874[1][h]).

*Dawn A. Schumacher* and *Norma J. Godre,* City Attorneys, for the plaintiff.

*Richard J. Levine* for the defendant.

LEVIN, J. The questions presented are whether

—a police officer may enter a home, without a warrant, when he reasonably believes that a person inside the home may be seriously injured; and,

—whether he may arrest for misdemeanor violations of city ordinances, driving under the influence of alcohol, and leaving the scene of a personal injury accident, if, after proper

entry, he has reasonable cause to believe that the person was, at the time of an accident, the driver of a vehicle involved in an accident, and was operating the vehicle upon a public highway or other place open to the general public.[1]

We answer both questions in the affirmative.

I

James Frederick Ohlinger was arrested in his home for driving under the influence of alcohol and leaving the scene of a personal injury accident. He moved to have the arrest declared unlawful, and all evidence obtained as a result of the police entry into his home suppressed. The district court denied the motion, finding the entry by the police was justified by the need to determine whether Ohlinger had been injured, and that the arrest was authorized by statute.[2] The circuit court ruled that the entry and arrest were unlawful, and directed that all evidence obtained as a result of

[1]    (1) A peace officer, without a warrant, may arrest a person in the following situations:

* * *

(h) When the peace officer has reasonable cause to believe that the person was, at the time of an accident, the driver of a vehicle involved in the accident and was operating the vehicle upon a public highway or other place open to the general public, including an area designated for the parking of vehicles, in the state while in violation of section 625(1) or (2) of the Michigan vehicle code, Act No. 300 of the Public Acts of 1949, being section 257.625 of the Michigan Compiled Laws, or of a local ordinance substantially corresponding to section 625(1) or (2) of Act No. 300 of the Public Acts of 1949. [MCL 764.15; MSA 28.874.]

See also MCL 257.625; MSA 9.2325.

[2] MCL 764.15; MSA 28.874 and MCL 257.625; MSA 9.2325.

the entry into Ohlinger's home should be suppressed. The Court of Appeals affirmed.[3]

Officer Brad Dalton, who questioned Ohlinger in his home on the night of the incident, was the only witness at the evidentiary hearing. Dalton testified that he was summoned to the home of the King family, the scene of what he described as an "injury accident." King told Dalton that he and his wife had heard a crash and ran outside to see a Pontiac 6000 being driven away by a man holding his head as if injured. He gave Dalton the license number of the vehicle, and Dalton proceeded to the address of the owner.

The Pontiac 6000 described by King was parked in the driveway. The front end was smashed, and had fresh mud on it. Dalton approached the front door, rang the bell and knocked, but received no response. He shined a flashlight into the window next to the door and saw no one. He asked a dispatcher to call the residence, and heard the phone ring, again without response.

Dalton walked to a window at the northeast corner of the house, shined his flashlight, and observed Ohlinger lying on a bed. He was not moving, and Dalton testified that Ohlinger's head was bleeding. He pounded on the window and shouted, to no avail. He did not summon Emergency Medical Services or an ambulance. He acknowledged that, in addition to concern about Ohlinger's condition, by this time he considered Ohlinger a suspect in the accident that occurred in front of the King residence.

Dalton then entered the house through an unlocked rear door. He proceeded to the bedroom, and, after some difficulty, roused Ohlinger. Ohlinger was unsteady, but Dalton testified that he

[3] 183 Mich App 639; 455 NW2d 715 (1990). This Court granted leave to appeal. 436 Mich 881 (1990).

was able to determine that Ohlinger was not seriously injured.

Dalton further testified that while speaking to Ohlinger he detected alcohol on Ohlinger's breath. This, coupled with Ohlinger's unsteadiness and slurred speech, led Dalton to believe that Ohlinger was intoxicated. King was summoned. It is unclear whether he was summoned before or after Dalton spoke with Ohlinger.

Ohlinger was taken into the living room, where King identified him as the driver of the automobile that crashed into the King mailbox and automobile. Ohlinger was arrested, taken to the station house, and given a Breathalyzer test. He was charged with misdemeanor violations of City of Troy Ordinances, operating a motor vehicle while under the influence of intoxicating liquor, and leaving the scene of a personal injury accident.

II

State and federal courts have ruled that a police officer may enter a dwelling without a warrant when he reasonably believes that a person inside is in need of medical assistance. The United States Supreme Court observed:

> Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. . . . But a warrantless search must be "strictly circumscribed by the exigencies which justify its initiation" . . . . [Citations omitted. *Mincey v Arizona,* 437 US 385, 392-393; 98 S Ct 2408; 57 L Ed 2d 290 (1978).]

In *State v Castro,* 238 NJ Super 482; 570 A2d 40 (1990), a high school student was observed by a school official swallowing cocaine, apparently to conceal evidence. He then ran from school. The police were called and went to his home on the supposition that that would be the most logical place for him to have gone. The investigating officer was told by the person answering the door that he was the only person at home. The officer testified that he stepped into the foyer while the person went to obtain identification. From there he heard movement behind a first floor door, went to investigate, and observed the defendant, who dropped a package containing cocaine in plain view of the officer.

The court held that the investigating officer was justified in believing that he might be confronted with a medical emergency. He had testified that his purpose in going to the house was his belief that that defendant " 'was there and that he was in some danger from ingesting whatever white powder was in that packet . . . .' " *Id.,* p 485. The court noted that the officer's first action after finding the defendant was to call an ambulance to provide emergency care, and that he made no effort to search any part of the house except where the noise came from.

Rejecting the defendant's contention that proof of actual danger of death and certainty of location should be required before a search without a warrant may be made pursuant to the emergency doctrine, the court said:

> We can think of nothing more likely to chill diligent police efforts to preserve life than to here require proof of actual danger of death and cer-

tainty of location to justify the limited and focused incursion made in the present case.[4] [*Id.*, p 489.]

In this case, the police were justified both in shining a flashlight into Ohlinger's bedroom and, upon seeing him bleeding and not moving, entering his home to determine if assistance was required. King had stated that Ohlinger drove away holding his head as if injured. This, coupled with the inability to determine, without entry, whether Ohlinger was injured, justified further police investigation as part of the community caretaker function.

Where the police have probable cause, based on specific, articulable facts, to believe that immediate entry is necessary to assist a person who may be in serious need of medical aid, they may enter

---

[4] In *State v Halla-Poe*, 468 NW2d 570, 572 (Minn App, 1991), a bystander observed the defendant drive erratically down a highway and bump into the median curb three times before coming to a stop. The bystander assisted the driver, who appeared to him intoxicated, and took the driver home. Worried about her condition, he then called the police. The police came to her apartment door, and yelled, "Police! Are you okay?" After receiving no response, they entered the apartment and found the defendant in bed.

The defendant was asked if she was all right, and she replied that she was not. An officer testified that he believed the defendant was unable to care for herself and that she told them she had no one to call. The officers took the defendant outside where she was identified by the witness, and then removed her to a detoxification facility. The officer stopped en route at the police station where the defendant was given a Breathalyzer test, which measured 0.32 percent, and was charged with driving while intoxicated.

The court approved the application of the emergency doctrine to situations where the police have objective evidence that there is such an emergency:

The facts establish the officers' purpose for entering appellant's apartment was not a subterfuge to investigate and arrest appellant, but to see if she was in need of medical assistance. [*Id.*, p 573.]

without a warrant.[5] The entry must be limited to the justification therefor, and the officer must be motivated primarily by the "perceived need to render aid or assistance."[6] The officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance.

### III

Dalton testified that while questioning Ohlinger to determine his condition he became aware of additional circumstances providing probable cause to believe that Ohlinger was intoxicated. Since Ohlinger was the only person in the house, had a slight head injury, and otherwise fit the description given by King, Dalton reasonably believed that Ohlinger had been driving the automobile that struck the King mailbox and had committed the misdemeanors with which he was subsequently charged.

Whether a police officer, once justifiably inside a residence, may make a misdemeanor arrest without a warrant, was a question seemingly left open by the United States Supreme Court in *Welsh v Wisconsin,* 466 US 740, 749, n 11; 104 S Ct 2091; 80 L Ed 2d 732 (1984):

> Because we conclude that, in the circumstances presented by this case, there were no exigent circumstances sufficient to justify a warrantless home *entry,* we have no occasion to consider whether the Fourth Amendment may impose an

[5] Entry would not be justified solely on the basis that Ohlinger may have been intoxicated. MCL 764.21; MSA 28.880 provides that to make an arrest "a peace officer . . . when making an arrest with a warrant or when making a *felony* arrest without a warrant as authorized by law, may break open an inner or outer door of a building . . . ." (Emphasis added.)

[6] *State v Prober,* 98 Wis 2d 345, 365; 297 NW2d 1 (1980).

absolute ban on warrantless home arrests for certain minor offenses. [Emphasis added.][7]

The Court held that on remand the state court was to consider "whether the petitioner's arrest was justified because the police had validly obtained consent to enter his home." *Id.,* p 755, n 15.

The United States Supreme Court has repeatedly stated that the "physical *entry* of the home is the chief evil against which the wording of the Fourth Amendment is directed . . . ." *United States v United States Dist Court for the Eastern Dist of Michigan,* 407 US 297, 313; 92 S Ct 2125; 32 L Ed 2d 752 (1972) (emphasis added). This is consistent with the exception that permits an arrest at home without a warrant when the police are justifiably on residential premises. Professor LaFave wrote:

> [I]f the entry of the premises was obtained on some other lawful basis, then the *Payton-Steagald* [8] warrant requirement is inapplicable to an arrest thereafter made within—provided it is accomplished without exceeding the permissible scope of that entry. . . . [I]t is the otherwise unauthorized entry and not the arrest which gives rise to the warrant requirement. . . . Thus the police

---

[7] In *Welsh,* an obviously inebriated person was seen leaving his car after an accident. The police traced him to his residence through the license number, entered the home, and arrested him. The prosecution argued only that either the "hot pursuit" exigent circumstance or the need to gather evidence—the defendant's blood alcohol level—justified the entry into the Welsh residence without a warrant. The United States Supreme Court disagreed, holding that this was not hot pursuit, and that the need to gather evidence was insufficient because Wisconsin classified the offense of driving while intoxicated as a noncriminal, civil forfeiture offense. The prosecutor did not seek to justify the arrest on the basis that there was a medical emergency.

[8] In *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), the United States Supreme Court held that a police officer may not enter a residence to make a routine felony arrest without a warrant. See also *Steagald v United States,* 451 US 204; 101 S Ct 1642; 68 L Ed 2d 38 (1981).

once inside should be allowed (if they do not exceed the spatial boundaries of the consent given) to make an unannounced arrest. [2 LaFave, Search & Seizure (2d ed), § 6.1(c), pp 581, 584.]

Accordingly, once lawfully inside a residence, a police officer may make an arrest without a warrant that is authorized by law.

IV

Dalton had probable cause[9] to believe that Ohlinger had violated an ordinance corresponding to a Michigan statute.[10] He was lawfully on the premises for the purpose of investigating a possible serious medical emergency, and did not exceed the scope of an appropriate investigation of such an emergency. His conclusion that Ohlinger was driving while intoxicated was a result of his conversation with Ohlinger and the information that he had earlier obtained from King. The arrest was lawful.

V

The district court, having ruled that the entry into Ohlinger's home was lawful, denied the motion to suppress all evidence, including King's identification of Ohlinger, obtained as a result of the assertedly illegal entry. The district court did not address the question whether King's identification of Ohlinger at the scene was a "prompt, 'on-the-scene' corporeal identification[ ] within minutes

[9] See n 1. A peace officer may, without a warrant, arrest a person when he "has reasonable cause to believe that the person was, at the time of an accident, the driver of a vehicle involved in the accident and was operating the vehicle upon a public highway" while under the influence of intoxicating liquor. MCL 764.15(1)(h); MSA 28.874(1)(h).

[10] MCL 257.625; MSA 9.2325.

of the crime." *People v Anderson,* 389 Mich 155, 187, n 23; 205 NW2d 461 (1973). The Court of Appeals ruled, without a factual hearing at the district court level focusing on the question, or findings of fact by the district judge, that King's identification of Ohlinger was not "a reasonable police practice"[11] within the *Anderson* exception for a "prompt, 'on-the-scene' corporeal identification[ ] within minutes of the crime."

We agree with the district judge that the evidence obtained in Ohlinger's home is admissible absent a reason for exclusion other than the claim that the police acted improperly in entering his home.

We reverse the decision of the Court of Appeals and remand the case to the district court without prejudice to Ohlinger's right to a hearing on the *People v Anderson* issue.

Reversed and remanded to the district court.

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with LEVIN, J.

---

[11] *People v Ohlinger,* n 3 *supra,* p 646.