UNITED STATES of America, Plaintiff-Appellee,

v.

Jimmie Lou HENDRIXSON, Mable Hefner Stephens, et al., Defendants-Appellants.

No. 99-12088.

United States Court of Appeals,

Eleventh Circuit.

Nov. 29, 2000.

Appeals from the United States District Court for the Northern District of Georgia.(No. 98-00003-CR-2-3-WCO), William C. O'Kelley, Judge.

Before EDMONDSON, DUBINA and WILSON, Circuit Judges.

EDMONDSON, Circuit Judge:

Defendant-Appellants ("Defendants"), Jimmie Lou Hendrixson ("Hendrixson"), David Ledford ("Ledford"), Mable Stephens ("Stephens") and Michael Motes ("Motes") were convicted and sentenced to jail for their parts in a wide ranging conspiracy to possess and to distribute methamphetamine throughout Northern Georgia. All Defendants were convicted of violating 21 U.S.C. § 846—conspiring to distribute methamphetamine in violation of 21 U.S.C. § 841. Hendrixson, Stephens and Motes were also convicted of knowingly possessing with intent to distribute methamphetamine in violation of 21 U.S.C. § 841.[1] We affirm the district court's decision on each of the Defendants' grounds for appeal.

Defendants appeal their convictions on these grounds: 1) Each of the Defendants challenges the district court's denial of their motions for mistrial due to the improper behavior of the court translator; 2) Ledford and Hendrixson challenge the district court's decision to allow Special Agent John Cagle to testify about quantities, packaging, prices, paraphernalia, drug usage and methods of operation; 3) Stephens and Motes challenge the sufficiency of the evidence presented for their convictions under 21 U.S.C. § 841 and 21 U.S.C. § 846; 4) Motes challenges the district court's determination not to suppress evidence seized from his residence on 23 May 1997; 5) Stephens challenges the district courts determination not to suppress evidence seized from her residence on 21 August 1997; 6) Stephens challenges the district court's determination that most of the drugs used to calculate her relevant conduct were methamphetamine; and 7) Ledford and Motes challenge the district court's denial of an opportunity to proffer evidence of actual

---

[1] Hendrixson was convicted of two counts of violating 21 U.S.C. § 841 for two different dates.

innocence of prior drug convictions noticed by the government in the government's sentencing information.

None of the contentions warrant appellate relief. But Stephens' argument for exclusion of the evidence seized in her home on 21 August 1997 warrants discussion.

*Statement of Facts*

Defendants were participants in a broad based drug distribution conspiracy spanning over three years. The conspiracy consisted of at least 11 people working in Northern Georgia. Two members of the conspiracy pled guilty pursuant to plea agreements. Over the course of the conspiracy, Hendrixson maintained residences where she stored and distributed large quantities of methamphetamine. Police executed search warrants on two of her residences and did find large quantities of methamphetamine. Police executed one search of Motes' residence finding close to 200 grams of methamphetamine. Police also executed a search of Stephens' residence finding over 300 grams of methamphetamine. Police were accompanied by a television reporter during the search of Stephens' residence.

*The Search of Stephens' Residence*

Appellant Stephens sought to suppress evidence obtained during the search of her residence on 21 August 1997. Among other things, Stephens argued that the police allowed the involvement of the news media. She says this involvement violated her Fourth Amendment Rights. The Magistrate Judge's recommendation—later adopted by the district court—found, in the light of the then current case law, that permitting the media access to the residence during the search did not rise to the level of a violation of the Fourth Amendment and thus did not support suppression of the evidence. Although we now must disagree with the district courts conclusion that involvement did not constitute a violation of the Fourth Amendment, we conclude that suppression of the evidence is not required in this case.

In 1999, the United States Supreme Court concluded that, when the police bring the media into a person's residence during the execution of a warrant, the police violate the person's Fourth Amendment rights. *Wilson v. Layne,* 526 U.S. 603, 614, 119 S.Ct. 1692, 1699, 143 L.Ed.2d 818 (1999). The Court noted that prior case law directed that "police actions in execution of a warrant be related to the objectives of the authorized intrusion." *Id.* at 611, 119 S.Ct. at 1698 (citing *Arizona v. Hicks,* 480 U.S. 321, 325, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987)). The Court noted that the reporters were not present for reasons related to the justification for police entry into a home, and the Court concluded that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution

of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." *Id.* at 614, 119 S.Ct. at 1699.

In the case before us, the reporter was not aiding in the execution of the warrant. The government itself argued that the reporter in this case did nothing to aid in the execution of the warrant: he arrived after the search was in progress and did not move, touch or handle anything in the residence. In the light of *Wilson v. Layne,* the district court erred in holding this media presence was no Fourth Amendment violation.[2]

Although Stephens' Fourth Amendment rights were violated, we conclude that suppression of the evidence found during the search of her home is not required in this case. In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court wrote, "[w]hether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Id.* at 906, 104 S.Ct. at 3412 (internal quotation marks omitted, quoting *Illinois v. Gates,* 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed.2d 527 (1983)).

In its *Wilson* opinion, when the Court declared the police behavior to be a violation of the Fourth Amendment, the Court also said "[w]e have no occasion here to decide whether the exclusionary rule would apply to any evidence discovered or developed by the media representatives." *Wilson,* 526 U.S. at 614 n. 2, 119 S.Ct. 1692. The Court was careful to point out that the violation of the Fourth Amendment was the presence of the media in the home, not the presence of the police. *Id.* So to us, *Wilson's* footnote suggests that evidence obtained by the police when the media is just present is not subject to the exclusionary rule, while it may remain an open question about whether evidence obtained by the media is subject to the exclusionary rule.

We see alternative readings of this footnote.[3] But the interpretation of *Wilson* we propose is supported by the goals of the exclusionary rule and by the history of occasions on which the Court has seen fit to apply the rule when the police have exceeded the scope of a warrant.

---

[2]The magistrate judge and district court came to their conclusions before *Wilson* was decided or even argued. Without the benefit of *Wilson,* the trial court properly analyzed the same precedents later reviewed by the Supreme Court; and the trial court came to, what was then, an arguably correct legal conclusion.

[3]Someone might argue that, although the Court withheld judgment on whether the exclusionary rule applied to evidence found by private parties, the rule nonetheless must definitely apply to the evidence seized by the government entities responsible for the Fourth Amendment Violation.

*Wilson* grounded the Fourth Amendment violation on the fact that the police activities went beyond those authorized by the warrant. *Id.* at 611, 119 S.Ct. at 1697-98. Therefore, we examine whether exceeding the scope of the warrant by allowing the media to be present in the search requires exclusion of the evidence obtained in the search. The warrant clause of the Fourth Amendment requires that a warrant "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The purpose is to prevent general searches. *See Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). Thus when a police officer engages in a search outside of the proper scope (whether that scope be defined by a warrant or by circumstances), evidence obtained in that search may be excluded. *See Horton v. California,* 496 U.S. 128, 140, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990). But the common thread in such cases is that the evidence was discovered on account of the police exceeding the scope of a proper search.

Only the evidence seized while the police are acting outside of the boundaries of the warrant is subject to suppression. *See United States v. Jones,* 31 F.3d 1304, 1314 (4th Cir.1994) (stating that although "evidence which is not identified within a search warrant may be excluded if the executing officer exceeds the scope of the warrant, such exclusion does not extend to evidence actually named in the search warrant which is discovered during the course of the search"). Police misconduct does not necessarily require the exclusion of the evidence seized in a search. *See Leon,* 468 U.S. at 911, 104 S.Ct. at 3414 (saying "the connection between the police misconduct and evidence of crime may be sufficiently attenuated to permit use of that evidence at trial ...").

Although the media were present for the search of Stephens' residence, media presence did not expand the scope of the search (the search actually carried out by the police themselves) beyond that allowed by the terms of the warrant. There is no allegation that the reporter aided the search; he did not touch, move, or handle anything in the residence. The police thus conducted a search within the parameters of the warrant, and the evidence obtained during the search is not subject to the exclusionary rule.[4]

AFFIRMED.

---

[4]Stephens argues that only suppression of the evidence will deter officers from similar violations of the Fourth Amendment in the future. Although deterrence is a central goal of the exclusionary rule, *See, United States v. Leon,* 468 U.S. at 906, 104 S.Ct. 3405, alternative means exist for deterring this behavior: for example, *Bivens* actions against federal law enforcement officers and Section 1983 actions against state officers. *See, Berger v. Hanlon,* 129 F.3d 505 (9th Cir.1997) and *Ayeni v. Mottola,* 35 F.3d 680 (2nd Cir.1994).