2002 ND 133

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Matthew Robert KEILEN, Defendant and Appellant.**

**State of North Dakota, Plaintiff and Appellee,**

v.

**Kristy Michelle Dykhoff, Defendant and Appellant.**

**Nos. 20020064–20020065, 20020066–20020067.**

Supreme Court of North Dakota.

Aug. 15, 2002.

Trent W. Mahler, Assistant State's Attorney, Fargo, for plaintiff and appellee.

Steven M. Light, Larivee & Light, Grand Forks, for defendants and appellants.

KAPSNER, Justice.

[¶ 1] Matthew Keilen and Kristy Dykhoff appeal from their convictions for possession of a controlled substance and possession of drug paraphernalia. Each entered a conditional plea of guilty with a right to appeal the denial of the motion to suppress evidence seized as a result of entry into their apartment. Keilen and Dykhoff also argue the trial court made improper findings based on information outside of the record. The State argues any appeal was not properly preserved and the search falls within the community caretaker exception to the warrant requirement. The appeal was adequately preserved. Because the entry by officers into Keilen and Dykhoff's home violated the Fourth Amendment, the evidence should have been suppressed. We reverse and remand.

I

[¶ 2] On August 4, 2001, Fargo police officers were dispatched to an apartment building to investigate the report of a domestic dispute. A neighbor reported hearing yelling, fighting, and a loud crash. When the first officer arrived, he spoke with the neighbor. The neighbor told the officer he was afraid someone was hurt. A second officer arrived shortly after the first officer.

[¶ 3] Following his discussion with the neighbor, the officer went to the door of the apartment where the neighbor said the noises came from. After listening for any noise from within the apartment for twenty seconds, the officer knocked on the door and identified himself. He continued to knock "for a minute or two" without a response. The officer testified he heard "voices murmuring" and what he identified as someone coming to the apartment door and walking away without opening the door. The officer continued to knock on the door and identify himself after the person walked away from the door. After

no response, the officer and his partner entered the apartment.

[¶ 4] Once inside, the two police officers encountered Keilen and Dykhoff. Keilen had scratches on his face. Both told the officers they were not in need of assistance. Even though both Keilen and Dykhoff refused help, the officers interviewed them about the loud noises reported from their apartment. While separately interviewing Keilen and Dykhoff, a third police officer arrived at the apartment. This officer observed marijuana and marijuana paraphernalia in plain view within the apartment.

[¶ 5] Based on the presence of the drugs and paraphernalia, a narcotics investigator was contacted. The information gained on August 4, 2001, coupled with other previously received information, allowed the narcotics investigator to secure a search warrant for the apartment. The search yielded contraband which formed the basis for the present charges.

[¶ 6] Claiming an unlawful search, Keilen and Dykhoff moved to suppress the evidence found as a result of the police officers entering their apartment, and any evidence subsequently gathered as fruit of the poisonous tree. The motion to suppress was denied. The State entered into conditional plea agreements with both Keilen and Dykhoff. The agreements, signed by both the prosecuting attorney and the trial court, conformed to N.D.R.Crim.P. 11(a)(2) and referenced the unsuccessful suppression motion. After conditionally pleading guilty, Keilen and Dykhoff "appeal[ed] the memorandum on motion to suppress and dismiss[,] and [the] order denying the motion to suppress and dismiss...." The State contends the initial search fell within the community caretaking exception to the warrant requirement. The State also contends Keilen and Dykhoff failed to preserve an appeal because

their notice of appeal is not specifically from the criminal judgments.

## II

[¶ 7] The right of appeal is statutory. *First American Bank West v. Berdahl,* 556 N.W.2d 63, 63 n. 1 (N.D.1996); *Olson v. Job Service North Dakota,* 379 N.W.2d 285, 287 (N.D.1985). Section 29–28–06 of the North Dakota Century Code specifies a defendant may appeal "[a] verdict of guilty; ... [a] final judgment of conviction; ... [a]n order refusing a motion in arrest of judgment; ... [a]n order denying a motion for a new trial; or ... [a]n order made after judgment affecting any substantial right of the party." "[W]hile the right to appeal is purely statutory, statutes conferring the right to appeal must be liberally construed, and that in determining appealability it is not the label which controls but, rather, the effect." *State v. Jelliff,* 251 N.W.2d 1, 4 (N.D.1977).

[¶ 8] "We have previously held that an attempted appeal from an order for judgment or a memorandum decision will be treated as an appeal from a subsequently-entered consistent judgment, if one exists." *Kaiser v. State,* 417 N.W.2d 175, 177 (N.D. 1987). This Court has also held "when the memorandum opinion contains an order which was intended to be a final order and the order is one from which an appeal may be taken pursuant to statute, we will treat the appeal as an appeal from the order." *Id.*

[¶ 9] The State entered into conditional plea agreements with both Keilen and Dykhoff in which it consented to the reservation of a right to appeal. While the wording used by Keilen and Dykhoff in their notice of appeal is less than precise, the effect of the attempted appeal from the memorandum opinion on the motion to

suppress the evidence and dismiss the charges is the same as if the appeal was from the subsequently-entered consistent judgment of conviction. *See id.* Because the record contains a subsequently-entered judgment consistent with the "memorandum on motion to suppress and dismiss," and because the State consented to the reservation of an appeal, this Court will treat the appeal as an appeal from a final judgment of conviction.

### III

[¶ 10]   We affirm the decision of a trial court on a motion to suppress, after resolving conflicting evidence in favor of affirming the decision, unless we conclude there is insufficient evidence to support the decision or the decision goes against the "manifest weight of the evidence." *State v. Loh*, 2000 ND 188, ¶ 4, 618 N.W.2d 477. "While the court's legal conclusions are fully reviewable, we defer to its factual findings." *State v. Huffman*, 542 N.W.2d 718, 720 (N.D.1996). "Recognizing the importance of the trial court's opportunity to observe witnesses and assess their credibility, we accord great deference to the trial court's decision in suppression matters." *Loh*, at ¶ 4.

[¶ 11]   An individual is protected from unreasonable searches and seizures in their home by the Fourth Amendment to the United States Constitution, and by Article I, section 8 of the North Dakota Constitution.   The United States Supreme Court has recognized a " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).   "[T]he Fourth Amendment has drawn a firm line at the entrance to the

house." *Id.* at 590, 100 S.Ct. 1371, 63 L.Ed.2d 639. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* As the Supreme Court recently reiterated, "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, — U.S. ——, 122 S.Ct. 2458, — L.Ed.2d —— (2002).   Under *Payton*, "[w]arrantless searches and seizures inside a home are presumptively unreasonable." *City of Fargo v. Lee*, 1998 ND 126, ¶ 8, 580 N.W.2d 580. *See also State v. Kitchen*, 1997 ND 241, ¶ 13, 572 N.W.2d 106.

[¶ 12]   In a suppression motion, the defendant has the initial burden of establishing a prima facie case that the evidence was illegally seized. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 6, 639 N.W.2d 478. After the prima facie burden is met, the burden shifts to the prosecution. *Id.* "The government has the burden to show a warrantless search falls within an exception to the warrant requirement." *Lee*, at ¶ 8. Without an exception, "evidence gained in violation of the Fourth Amendment's protections against unreasonable searches and seizures is inadmissible under the exclusionary rule and must be suppressed." *Kitchen*, at ¶ 9. Evidence subsequently gained as a result of the initial illegally acquired evidence is "fruit of the poisonous tree" and must be suppressed, unless an exception to the warrant requirement exists. *Id.*

[¶ 13]   In this instance, the trial court denied the motion to suppress because it was "of the opinion that the officers' conduct was justifiable under the community caretaker exception" to the warrant clause of the Fourth Amendment.[1]

---

1.   The trial court ruled the exigent circumstances exception to the warrant clause was

not available because the State "[did] not argue[ ] forcefully that the exigent circum-

Keilen and Dykhoff argue the doctrine does not apply to dwellings. They contend the police officers entrance into their apartment "to check to see if everyone was all right," when the officers had not heard or observed any signs of a disturbance does not justify the application of the community caretaker doctrine. The State contends the community caretaker exception to the warrant clause is applicable to residences under North Dakota case law, and exclusion of the evidence at issue would discourage law enforcement from fulfilling its recognized community caretaker function.

[¶ 14] "Law enforcement officers frequently act in the role of community caretaker." *Lapp v. Department of Transportation*, 2001 ND 140, ¶ 14, 632 N.W.2d 419. "Officers' actions under the community caretaker role differ from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* "This Court has recognized community caretaking as justifying law enforcement contact, including stops, without reasonable suspicion of unlawful conduct." *State v. Glaesman*, 545 N.W.2d 178, 181 (N.D.1996). "A caretaking encounter does not foreclose an officer from making observations that lead to a reasonable and articulable suspicion." *Lapp*, at ¶ 14.

[¶ 15] The source of the community caretaking doctrine is the Supreme Court's decision in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). In *Cady*, an off-duty Chicago police officer was convicted of murder after Wisconsin police officers, while searching his rented car for his service revolver following a one-car accident, found blood and other evi-

dence of wrongdoing. *Id.* at 435–39, 93 S.Ct. 2523, 37 L.Ed.2d 706. The Wisconsin officers were looking for the service revolver because they believed off-duty Chicago police officers were required to carry their revolvers. *Id.* at 437, 93 S.Ct. 2523, 37 L.Ed.2d 706. The Wisconsin officers testified the search to find the revolver "was 'standard procedure in our department.'" *Id.* The search uncovered various items covered with blood, which led to the procurement of a search warrant to search the rental vehicle and one other vehicle. *Id.* at 437–38, 93 S.Ct. 2523, 37 L.Ed.2d 706.

[¶ 16] In determining the Wisconsin police officers did not need a warrant to conduct the search which initially discovered blood, the Supreme Court held:

> The Court's previous recognition of the distinction between motor vehicles and dwelling places leads us to conclude that the type of caretaking "search" conducted here of a vehicle that was neither in the custody nor on the premises of its owner, and that had been placed where it was by virtue of lawful police action, was not unreasonable solely because a warrant had not been obtained.

*Id.* at 447–48, 93 S.Ct. 2523, 37 L.Ed.2d 706. The Supreme Court recognized "[l]ocal police officers … frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what … may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. 2523, 37 L.Ed.2d 706.

---

stances exception applies…." The exigent circumstances exception was neither briefed nor argued to this Court. While expressing no opinion on whether exigent circumstances

existed, "[i]ssues not briefed or argued are deemed abandoned." *Olmstead v. First Interstate Bank of Fargo, N.A.*, 449 N.W.2d 804, 807 (N.D.1989).

[¶ 17] All cases, except one, in which this Court has discussed the application of the community caretaking doctrine involve vehicles. *See City of Jamestown v. Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478 (holding the officer's actions in asking the driver if he could talk with her after she had exited her vehicle did not fall within the community caretaking function); *Lapp*, 2001 ND 140, ¶¶ 14–15, 632 N.W.2d 419 (holding the officer was performing a community caretaking function in knocking on the window of an idling vehicle with the headlights on when the driver was slumped over the steering wheel after a private security guard could not awaken the driver); *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 10, 571 N.W.2d 137 (holding the officer was performing a community caretaking function in approaching a parked vehicle which was not proceeding with other traffic around an accident location); *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 773–75 (N.D.1996) (holding the officer was exercising his community caretaking function in approaching an idling vehicle with its lights on when the driver was slumped over the steering wheel); *State v. Franklin*, 524 N.W.2d 603, 605 (N.D.1994) (holding the encounter between the occupants of a stopped pickup truck and police officers in a motel parking lot "was more of a caretaking activity than a stop or seizure"); *Halfmann*, 518 N.W.2d at 730–31 (holding the officer was acting in the caretaker capacity in questioning the driver of vehicle which had pulled off and stopped on the shoulder of a gravel road); *State v. Brown*, 509 N.W.2d 69, 72 (N.D.1993) (holding the officer's stop of a vehicle was not justified on the ground of community caretaking when the officer testified he did not believe the driver was in need of assistance); *State v. Sarhegyi*, 492 N.W.2d 284, 286 (N.D.1992) (determining the community caretaking function did not apply when an officer stopped a vehicle from leaving a farm implement lot in the middle of the night when "there were no indicia of an emergency of any kind"); *State v. Langseth*, 492 N.W.2d 298, 301 (N.D.1992) (holding the community caretaking function did not apply where the officer stopped to see if a driver needed assistance, but when the driver began to pull away the officer turned on flashing lights and thereby "converted the encounter into a seizure"). In the one case where this Court discussed the community caretaking function outside of the realm of vehicles, we determined it did not apply under the facts. *See State v. DeCoteau*, 1999 ND 77, ¶ 21, 592 N.W.2d 579.

[¶ 18] In *DeCoteau*, four Mandan police officers responded to an anonymous domestic disturbance report at the trailer of Randy DeCoteau and Kim Engel. *Id.* at ¶ 2. Upon arrival, the police officers found a group of children standing in the street, one of whom told the officers he had heard the sound of glass breaking from within the residence. *Id.* Not only were the officers unsure if there had been a domestic disturbance, when they arrived at the residence there was no disturbance and DeCoteau and Engel were unloading a car outside the trailer. *Id.* at ¶¶ 2–3. Engel "told [the officers] there was nothing wrong and she wanted them to leave." *Id.* at ¶ 3. "One officer told Engel that because the sound of breaking glass had been reported, he would like to see whether the children were all right." *Id.* at ¶ 4. Engel entered the trailer with the officers following her. *Id.* "Engel never affirmatively consented to the officers entering the house; they merely followed her in." *Id.* Once inside the trailer, marijuana residue was found inside a marijuana pipe. *Id.* This discovery led to the acquisition of a search warrant. *Id.*

[¶ 19] In determining "[t]here was no 'community caretaking' role to fill"

in entering the trailer, this Court reasoned:

> In this case, the police were called to investigate an anonymous tip regarding a domestic disturbance. When the officers arrived, there was no disturbance. Kim Engel was unloading her car and asked the officers why they were there. She clearly did not want the officers there, and did not need or request their assistance.

*Id.* at ¶ 21. As in *DeCoteau*, when the Fargo police officers arrived at Keilen and Dykhoff's apartment, there was no disturbance. *See id.* Although the officer could hear movement and voices from within the apartment, the officer did not testify he believed anyone inside was injured. Rather, the officer testified he merely wanted "to check to see if everyone was all right." This is not sufficient under the circumstances. In order to enter a home the police need a warrant or probable cause plus exigent circumstances. *Payton*, 445 U.S. at 590, 100 S.Ct. 1371, 63 L.Ed.2d 639; *Kirk*, — U.S. ——, 122 S.Ct. 2458, 153 L.Ed.2d 599. In this case, the police did not have a warrant and the trial court determined exigent circumstances did not exist. Because there was no disturbance when the officers arrived, and it was not discernible to the officers that anyone required assistance, the community caretaking function does not apply.

### IV

[¶ 20] Keilen and Dykhoff adequately preserved their right to appeal the trial court's denial of their motion to suppress. The decision of the trial court is reversed. We have reviewed the remaining argument and find it to be without merit. The evidence against Keilen and Dykhoff should have been suppressed, and the case is remanded to allow them to withdraw their guilty pleas.

[¶ 21] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.