Filed 1/19/05 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2005 ND 11

State of North Dakota, Plaintiff and Appellee

v.

Dawn Marie Nelson, Defendant and Appellant

No. 20040084

Appeal from the District Court of Mountrail County, Northwest Judicial District, the Honorable William W. McLees, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Neumann, Justice.

Michael R. Hoffman, P.O. Box 1056, Bismarck, N.D. 58502-1056, for defendant and appellant.

Michel W. Stefonowicz, Assistant State’s Attorney, P.O. Box 289, Crosby, N.D. 58730-0289, for plaintiff and appellee.

State v. Nelson

No. 20040084

Neumann, Justice.

[¶1] Dawn Nelson appeals from the trial court’s order deferring imposition of sentence entered on a conditional plea of guilty.  Nelson challenges the trial court’s denial of her motion to suppress evidence obtained from her home.  We reverse and remand for further proceedings consistent with this opinion.

I

[¶2] Law enforcement were dispatched to pick up Dawn Nelson at her home in Stanley, North Dakota, and transport her to Trinity Hospital in Minot pursuant to a district court emergency treatment order.  Nelson lives in a multi-level home with three levels and a basement.  The first level has a den with a door to the garage; the second level has a living room, dining room, and bathroom; and, the third level has three bedrooms.  When law enforcement arrived Nelson was in the den, on the first level.  As she was escorted out the door into the garage, Nelson allegedly stated, “he made it right here.”  Law enforcement interpreted that statement to mean her husband had manufactured methamphetamine at the residence.  Nelson also stated she needed to find her inhaler because she was having an asthma attack.  Nelson indicated she thought the inhaler was in the den in a milk crate.  The officers and Nelson searched for her inhaler.  Chief Deputy Bristol and Chief Halvorson searched other areas of the home while the remaining officers and Nelson searched in the den.  Bristol testified he entered an upstairs bedroom and found a “foil bindle” sitting on a dresser.  Immediately after discovering the bindle, he heard someone say they found the inhaler.  He confiscated the foil bindle and returned to the den where the inhaler was found in Nelson’s purse.  Nelson testified the length of the search was less than a minute.  Bristol testified the search was about a minute to a minute and a half.  Whether Nelson told Bristol the inhaler was not in any other part of the house is disputed.

[¶3] Bristol applied for a search warrant of Nelson’s home based, in part, on the foil bindle found in her home.  The search warrant was granted and executed.  Halvorson requested the presence of Gary Nelson, Dawn Nelson’s father-in-law, during the search.  The State argues Gary Nelson was present to allow entry to the home and ensure against future allegations of officer impropriety.  Gary Nelson called Tammy Chrest, a child protection worker, and requested she come to the home to observe the home’s condition.  Neither Gary Nelson or Tammy Chrest participated in the search.

[¶4] The search resulted in Dawn Nelson’s arrest for possession of marijuana and drug paraphernalia.  The trial court denied her motion to suppress evidence.  She conditionally pled guilty and reserved the right to appeal.

II

[¶5] Dawn Nelson’s notice of appeal indicates she is appealing from the order deferring imposition of sentence.  Under N.D.C.C. § 29-28-06, an order deferring imposition of sentence is not an appealable order.  The trial court did not enter a  separate judgment of conviction.  However, when the order deferring imposition of sentence complies with the requirements of N.D.R.Crim.P. 32(b) for criminal judgments and no separate judgment of conviction has been entered, the order serves as the judgment of conviction.  
State v. Berger
, 2004 ND 151, ¶ 8, 683 N.W.2d 897.  In this case, the order satisfies the requirements of N.D.R.Crim.P. 32(b) and serves as the judgment of conviction.  Therefore, the appeal is properly before us.

III

[¶6] When reviewing a trial court’s ruling on a motion to suppress, we defer to the trial court’s findings of fact and resolve conflicts in testimony in favor of affirmance.  
City of Grand Forks v. Zejdlik
, 551 N.W.2d 772, 774 (N.D. 1996).  After resolving conflicting evidence in favor of affirmance, we affirm the trial court’s decision unless there is insufficient competent evidence to support the decision, or the decision goes against the manifest weight of the evidence.  
State v. Haverluk
, 2000 ND 178, ¶ 7, 617 N.W.2d 652.  Questions of law are fully reviewable.  
Id.

[¶7] On appeal, Dawn Nelson argues the evidence should be suppressed because the search warrant was obtained based on evidence illegally seized during the warrantless search of her home.  The State argues the officer’s presence in Nelson’s bedroom, where he saw and seized the foil bindle, was justified because it fell under the emergency exception to the warrant requirement.

[¶8] The trial court did not clearly articulate the legal basis for its decision permitting the use of the foil bindle as evidence supporting the issuance of the search warrant.  The officers did not have a search warrant at the time the bindle was discovered.  Therefore, an exception to the warrant requirement must apply before the foil bindle can support probable cause for the search warrant that was subsequently issued.  In its initial order denying suppression, the trial court failed to explain what exception to the warrant requirement, if any, applied.  On a subsequent motion for reconsideration, the trial court held  whether Nelson’s asthma attack presented officers with an actual emergency was debatable, however, the emergency exception did not apply because the officers were already legitimately inside Nelson’s home.  The trial court erred in denying Nelson’s motion to suppress without clearly explaining why the bindle could be considered, and it misinterpreted the law regarding the application of the emergency doctrine.

[¶9] The Fourth Amendment of the United States Constitution and Article I, Section 8, of the North Dakota Constitution protect individuals from unreasonable searches and seizures.  
City of Fargo v. Ternes
, 522 N.W.2d 176, 178 (N.D. 1994).  The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The United States Supreme Court has noted that searches and seizures inside a home without a warrant are presumptively unreasonable.  
Payton v. New York
, 445 U.S. 573, 586 (1980).  A warrantless search is not unreasonable if the government can prove the search or seizure is subject to one of the few well-

delineated exceptions.  
State v. DeCoteau
, 1999 ND 77, ¶ 7, 592 N.W.2d 579.  One such exception is the emergency doctrine.  
Ternes
, 522 N.W.2d at 178.  “The emergency doctrine allows police to enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress.”  
Id.

[¶10] Generally, the emergency exception is used when the police need to gain entry into a residence without a warrant.  
E.g.
, 
Lubenow v. ND State Highway Comm’r
, 438 N.W.2d 528 (N.D. 1989) (holding emergency exception applied when officer entered a garage to check on a person lying on the garage floor beside a vehicle).  In the present case, the trial court correctly noted the officers were already legally inside Nelson’s home.  However, the trial court incorrectly concluded that because the officers were legally inside, the emergency exception could not apply.

[¶11] In 
State v. Mitzel
, 2004 ND 157, 685 N.W.2d 120, we analyzed whether the exigent circumstances exception to the warrant requirement applied when a police officer was already inside a residence.  
Id.
 at ¶¶ 19-23.  Although we ultimately determined exigent circumstances did not exist in 
Mitzel
, the application of the doctrine is analogous to applying the emergency exception in Nelson’s case.  
See
 
id.
 at ¶ 23.

[¶12] This Court has outlined the requirements for applying the emergency exception:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

State v. Matthews
, 2003 ND 108, ¶ 28, 665 N.W.2d 28.  The officer’s reasonable belief an emergency existed is judged by an objective standard.  
Lubenow
, 438 N.W.2d at 532.

[¶13] Under the first requirement that law enforcement have reasonable grounds to believe an emergency is at hand and an immediate need for their assistance exists for the protection of life or property, we have applied the emergency doctrine when officers have a reasonable belief a situation involves a serious threat to an individual’s health.  
See
, 
e.g.
, 
Lubenow
, 438 N.W.2d at 533 (holding an officer had a reasonable belief an emergency existed when he observed a body lying beside a vehicle in a garage); 
Ternes
, 522 N.W.2d at 178 (holding officers had reasonable grounds to believe an emergency existed when they knew Ternes was in a serious vehicle accident and a large amount of blood was inside the vehicle and led to his home).  A review of other jurisdictions applying the emergency exception in cases involving a health risk yields similar results.  
See
, 
e.g.
, 
Sheik-Abdi v. McClellan
, 37 F.3d 1240, 1244 (7th Cir. 1994) (holding police entry proper when called by paramedics to assist with a person who consumed too much alcohol); 
Arizona v. Mata
, 609 P.2d 48, 54 (Ariz. 1980) (holding police entry justified when a man repeatedly stated his baby was shot); 
Illinois v. Sanjay
, 613 N.E.2d 344, 351 (Ill. App. Ct. 1993) (holding emergency exception applied when officer entered a home in response to a report of an unconscious male); 
Montana v. District Court
, 577 P.2d 849, 853 (Mont. 1978) (holding emergency exception applied when officers entered through an open door to determine whether a young man slumped over a table in the middle of the afternoon needed assistance); 
c.f.
 
Colorado v. Smith
, 40 P.3d 1287, 1290-91 (Colo. 2002) (holding emergency exception did not apply because an immediate crisis did not exist when defendant briefly passed out and immediately regained consciousness).

[¶14] In this case, the officers were inside Nelson’s home to transport her to Trinity Medical Center under a district court emergency treatment order.  Before the officers left her home, Nelson started to have an asthma attack and informed the officers she needed her inhaler.  Nelson testified she could not breathe, she was wheezing and struggling to breathe, and the search for the inhaler took “less than a minute because otherwise I would have started to black out.”  Officer Bristol testified:

Q. In your testimony this morning on direct examination by the prosecutor, it didn’t sound to me like you made an observation of her that this was somehow an emergency situation.

A. As far as her asthma?

Q. Yes.

A. I guess it didn’t.  She appeared to be — you know, upset.  Yeah, I will agree to that.

Q. Okay.  My question is, from your point of view she’s asking for an inhaler, but you’re not looking at it as an emergency situation, you know, if she doesn’t get her inhaler she’s going to die.

A. No, I didn’t look at it from that point of view.  My point of view for her wanting it was, you know, she knew she was going to be gone and it was something that she needed, you know, it was a medication, so we were going to make sure she went with it.

[¶15] There is conflicting testimony regarding whether Nelson’s condition was an actual emergency.  Weighing the evidence and determining the credibility of witnesses is a task that belongs exclusively to the trier of fact.  
City of Jamestown v. Tahran
, 2003 ND 35, ¶ 4, 657 N.W.2d 235.  We will not resolve conflicts in evidence.  
Id.
  Accordingly, we reverse the trial court’s determination the emergency doctrine did not apply, and we remand for a factual determination of whether an objective person would believe an emergency existed.

IV

[¶16] Dawn Nelson argues the evidence should be suppressed because she did not give the officers consent to search her entire home.  The trial court did not specifically decide whether Nelson consented to the search.  Whether Nelson gave consent is a question of fact determined by the totality of the circumstances.  
See
 
State v. Mitzel
, 2004 ND 157, ¶ 13, 685 N.W.2d 120.

[¶17] Consent is one of the exceptions to the Fourth Amendment’s warrant requirement.  
Mitzel
, 2004 ND 157, ¶ 13, 685 N.W.2d 120.  Whether consent is given is a question of fact.  
Id.
  “The scope of consent is measured objectively by what a reasonable person would have understood by the exchange between the police and the suspect.”  
Id.
  To prove consent, the State must show affirmative conduct that is consistent with giving consent.  
City of Jamestown v. Dardis
, 2000 ND 186, ¶ 11, 618 N.W.2d 495.  Merely showing a person took no affirmative action to stop the police from searching is not enough.  
Id.
  We have noted consent to search other items, such as a suitcase, cannot be implied from silence or the failure to object.  
Mitzel
, 2004 ND 157, ¶ 14, 685 N.W.2d 120.

[¶18] In Nelson’s case, the officers did not specifically request her consent to search the home.  She stated she needed her inhaler, but did not verbally ask the officers for help finding it.  The officers told her they would help and asked where she last had it.  In response to the officers’ question, she said it was probably in a milk crate in the den.  While other officers were searching in the den, Bristol went upstairs to search for the inhaler.  Bristol testified Nelson never told him not to go upstairs.  Nelson testified she noticed Bristol going upstairs and said, “No, it’s not up there.”

[¶19] Even if we disregard Nelson’s testimony that she told officer Bristol the inhaler was not upstairs, a reasonable person would not believe her conduct showed consent to search her entire home.  We have stated, “In determining whether a suspect has consented to an officer’s request to search, the question is not subjective but is whether a reasonable person would believe the conduct showed consent.  Consent should not be lightly inferred.  Consent must be proven by clear and positive testimony.  Consent must be unequivocal.”  
Mitzel
, 2004 ND 157, ¶ 17, 685 N.W.2d 120 (citations omitted).  None of the testimony in the record clearly proves language or conduct amounting to consent.  Dawn Nelson’s conduct cannot reasonably be interpreted to show she consented to the search of her home.

V

[¶20] The State argues the search warrant is supported by probable cause without the foil bindle.  Although the trial court found the foil bindle was legally discovered and did not consider this issue, we address it because of the likelihood of its reoccurrence on remand if the foil bindle is excluded.  
See
 
State v. Egan
, 1999 ND 59, ¶ 15, 591 N.W.2d 150.

[¶21] Probable cause to search exists if “the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched.”  
State v. Johnson
, 531 N.W.2d 275, 278 (N.D. 1995).  We consider whether sufficient evidence is presented to establish probable cause independent of the trial court’s findings.  
State v. Ballweg
, 2003 ND 153, ¶ 12,  670 N.W.2d 490.  The totality-of-the-

circumstances test is used to determine whether probable cause existed.  
Id.
  The magistrate must be presented with more than “bare-bones” information to establish probable cause.  
State v. Damron
, 1998 ND 71, ¶ 7, 575 N.W.2d 912.

Although each bit of information . . . , by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers . . . which is not weighed in individual layers but in the laminated total.  

Id.

[¶22] If the foil bindle is excluded, the remaining evidence includes Dawn Nelson’s delusional erratic behavior, and the statement her husband “made it right here,” which Bristol interpreted to mean her husband, Scott Nelson, made methamphetamine in their home.  The magistrate also knew Scott Nelson was currently in a drug rehabilitation program.

[¶23] During the application for the search warrant, the issuing magistrate inquired how Bristol knew Nelson’s statement “he made it right here” meant Scott Nelson made methamphetamine in the home.  Bristol never directly answered the question.  Officer Bristol later testified, in response to a different issue, that Scott Nelson had voluntarily committed himself to a drug rehabilitation program three or four weeks ago.  If Bristol correctly believed Scott Nelson made methamphetamine in their home, it would have been three or four weeks since it last occurred.

Stale information of previous misconduct does not establish probable cause that similar or other improper conduct is continuing to occur. . . .  Staleness is determined after reviewing the particular facts of each case, and passage of time may be unimportant to the validity of probable cause when the course of conduct is of a protracted or continuous nature. . . .  Drug use can also be a habituating and continuing offense.

State v. Roth
, 2004 ND 23, ¶ 17, 674 N.W.2d 495 (citations omitted).  In 
State v. Hage
, 1997 ND 175,  ¶ 14, 568 N.W.2d 741, we held the magistrate could properly rely on information pertaining to drug trafficking that was acquired one to four months before the search warrant.  The defendant in 
Hage
 was suspected of possessing a controlled substance.  
Id.
  Likewise, Dawn Nelson was suspected of possessing a controlled substance and the information about her husband’s use or manufacturing of methamphetamine was around three to four weeks old.  We conclude staleness is not an issue in this case.

[¶24] Officer Bristol did not supply the issuing magistrate with information supporting his conclusion that Dawn Nelson’s statement “he made it right here” meant Scott Nelson made methamphetamine in their home.  The magistrate did not further inquire how Bristol arrived at this conclusion.  Previously, courts have found spouse’s statements regarding their spouse’s involvement in illegal activity sufficient to support probable cause.  The reliability of a spouse’s statement has been assumed once it was disclosed the informant was the defendant’s spouse and resided at the address to be searched.  
Kansas v. Cowdin
, 959 P.2d 929, 933 (Kan. Ct. App. 1998).

[¶25] In 
Illinois v. McArthur
, 531 U.S. 326 (2001), police officers accompanied a woman to her home while she removed her belongings from the residence she shared with her husband.  
Id.
 at 328.  After removing her possessions, she told the officers “Chuck had dope in there” and she had seen him “slide some dope underneath the couch.”  
Id.
 at 329.  The United States Supreme Court noted police had probable cause to believe the home contained evidence of a crime.  
Id.
 at 331.  The Court stated, “The police had had an opportunity to speak with [her] and make at least a very rough assessment of her reliability.  They knew she had had a firsthand opportunity to observe her husband’s behavior, in particular with respect to the drugs at issue.”  
Id.
 at 332.

[¶26] Like 
McArthur
, Bristol had an opportunity to make an assessment of Dawn Nelson’s reliability.  He also knew she had an opportunity to observe Scott Nelson’s behavior in their home.  However, the spouse’s statements courts have found supporting probable cause contained a level of specificity and detailed facts that Dawn Nelson’s statement did not.  
E.g.
, 
Cowdin
, 959 P.2d at 931 (wife’s statement included specific details of the location of stolen goods, drugs, and guns her husband possessed); 
Kansas v. Arculeo
, 36 P.3d 305, 309 (Kan. Ct. App. 2001) (common law wife’s statement included details of drug use and drugs stored in her husband’s safe); 
New Hampshire v. Wilkinson
, 612 A.2d 926, 927 (N.H. 1992) (wife notified police her husband was involved in a hit and run accident and the vehicle was parked in the garage); 
New York v. Butchino
, 544 N.Y.S.2d 64, 65 (N.Y. App. Div. 1989) (wife signed a statement detailing her husband’s involvement in trafficking cocaine).  Dawn Nelson merely stated “he made it right here.”  Bristol’s testimony during the application for the search warrant does not elaborate on the basis for his assumption that Dawn Nelson was specifically referring to the manufacture of methamphetamine.  Without any further information regarding the conversation surrounding the statement or corroborating information that Scott Nelson actually manufactured methamphetamine, the statement alone cannot be used to support probable cause.  Bristol did not supply the issuing magistrate with information sufficiently explaining why he thought Dawn Nelson’s vague statement meant Scott Nelson manufactured methamphetamine in their home.  Without supporting information, we are left with Bristol’s speculation that her statement indicated methamphetamines were manufactured in the home.  “An affidavit expressed in conclusions without detailing underlying information is insufficient for probable cause.”  
State v. Rangeloff
, 1998 ND 135, ¶ 19, 580 N.W.2d 593.

[¶27] The magistrate was also presented with information regarding Dawn Nelson’s delusional behavior in the days before she was committed.  Bristol testified this behavior was consistent with methamphetamine use.  The magistrate noted her behavior was also consistent with several mental illnesses.  Conduct that appears innocent may support probable cause.  
State v. Thieling
, 2000 ND 106, ¶ 9, 611 N.W.2d 861.  “The relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts.”  
Id.
 (quoting 
Illinois v. Gates
, 462 U.S. 213, 243-44 n.13 (1983)).

[¶28] The officers were present at Dawn Nelson’s home on an emergency commitment order.  Her behavior, although possibly related to drug activity, could also be explained by noncriminal sources.  In 
Thieling
, we noted baggies, tinfoil and plastic altered in a manner consistent with drug packaging, discovered during a garbage search, 
but not containing drug residue, did not raise a high degree of suspicion.  
Thieling
, at ¶ 9.  We concluded the garbage search evidence, containing no drug residue, combined with other minimal evidence of drug activity, was “merely a thin layer to be measured in the probable cause analysis.”  
Id.
  Likewise, Dawn Nelson’s delusional behavior, consistent with either drug use or mental illness, is merely a thin layer in the probable cause analysis.

[¶29] If the foil bindle is excluded, very little evidence remains to conclude drugs would be found in Nelson’s home.  The “very few and very thin layers together” do not support probable cause to search Nelson’s home.  
Thieling
, at ¶ 13.  If the trial court determines the foil bindle was discovered during an unconstitutional warrantless search, the evidence stemming from the search of Dawn Nelson’s home must be suppressed.

VI

[¶30] Dawn Nelson argues the evidence found during the execution of the search warrant should be suppressed because the warrant and her constitutional rights were violated by the presence of Gary Nelson and Tammy Chrest during the execution of the search warrant.  The State argues the presence of Gary Nelson and Tammy Chrest did not violate Dawn Nelson’s constitutional rights and, even if it did, suppression of the evidence is not the appropriate remedy.  The trial court denied Nelson’s motion to suppress based on the presence of third parties.

[¶31] In 
Wilson v. Layne
, 526 U.S. 603, 614 (1999), the United States Supreme Court held the presence of third parties in a home during the execution of a warrant, who are not in aid of the execution of the warrant, is a violation of the Fourth Amendment.  The 
Wilson
 Court noted the violation of the Fourth Amendment was the presence of third parties, not the presence of the police.  
Id
. at n.2.  Since 
Wilson
, courts have held that exclusion of evidence is not the correct remedy for this type of Fourth Amendment violation.  
See
, 
e.g.
, 
United States v. Hendrixson
, 234 F.3d 494, 497 (11th Cir. 2000) (holding exclusion was not the appropriate remedy because the media presence did not expand the scope of the search); 
United States v. Workcuff
, No. 02-00189-01-CR-W-GAF, 2003 U.S. Dist. LEXIS 23775, at *42 (W.D. Mo. Dec. 18, 2003) (holding suppression was not the appropriate remedy when a photographer reporter was present, but did not aid in the search); 
Artis v. United States
, 802 A.2d 959, 968 (D.C. 2002) (holding the mere presence of the media during the execution of a search warrant did not require the remedy of exclusion).  These courts have noted the exclusionary rule might apply to evidence discovered by third parties present during the execution of the warrant, but not to the evidence lawfully found by law enforcement.  
E.g.
, 
Hendrixson
, 234 F.3d at 497.

[¶32] In Nelson’s case, the officers asked Gary Nelson to attend the execution of the search warrant.  The officers’ stated reason for Gary Nelson’s presence was to let them into the house and help ensure against future allegations of misconduct.  Although Gary Nelson was arguably there to aid in the execution of the warrant by allowing the officers entry into the house, his presence after allowing entry may not have been necessary.  Dawn Nelson has not presented any evidence that Gary Nelson did anything other than unlocking the doors and sitting beside an officer while inventorying items.  Dawn Nelson does not argue, nor does she present any evidence showing Gary Nelson actually discovered any of the evidence seized from her home during the execution of the warrant.  Gary Nelson’s presence did not expand the scope of the warrant and does not necessitate the suppression of evidence found during the search.  
See
 
Hendrixson
, 234 F.3d at 497.

[¶33] Dawn Nelson argues Tammy Chrest’s presence requires suppression of the evidence.  Tammy Chrest was invited to Dawn Nelson’s home by Gary Nelson, not by law enforcement.  The Supreme Court in 
Wilson
 held the presence of third parties invited by the police violated the Fourth Amendment.  
Wilson
, 526 U.S. at 614.  In the present case, the officers did not invite Tammy Chrest, Gary Nelson did.

[¶34] Relying on 
Wilson
, the Ohio Court of Appeals held that because the police did not invite the third party along during the execution of a warrant, their presence did not violate the Fourth Amendment.  
Ohio v. Covey
, No. L-98-1173, 2000 WL 638951 (Ohio App. 6 Dist. May 19, 2000).  Likewise, because the officers did not invite Tammy Chrest to Nelson’s home during the execution of the warrant, her presence did not violate Dawn Nelson’s Fourth Amendment rights.  The trial court did not err in its denial of Nelson’s motion to suppress based on the presence of Gary Nelson and Tammy Chrest during the execution of the search warrant.

VII

[¶35] We reverse the order deferring imposition of sentence and the denial of Nelson’s motion to suppress, and also the determination that the emergency exception did not apply because the officers were legally inside Nelson’s home.  We vacate the order denying the motion to suppress, and remand for  withdrawal of Nelson’s guilty plea and a determination of whether the officers were presented with an emergency situation justifying the search of Dawn Nelson’s home, and whether probable cause existed for the issuance of the warrant.  If the trial court determines there was not probable cause to support the issuance of the search warrant, the evidence obtained during the search of Nelson’s home must be suppressed.  We reverse and remand for further proceedings consistent with this opinion.

[¶36] William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.