2008 ND 152

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Byran Dale GILL, Defendant and Appellant.**

Nos. 20070364, 20070365, 20070366.

Supreme Court of North Dakota.

Aug. 28, 2008.

455

Cynthia M. Feland, Assistant State's Attorney, Courthouse, Bismarck, N.D., for plaintiff and appellee.

Danny L. Herbel, The Regency Business Center, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1]  Byran Gill appeals from three district court judgments entered after a jury found him guilty of driving under the influence of intoxicating liquor, driving while license privilege is suspended, and unlawful display of license plate or tab.  Gill argues the district court erred in denying his motion to suppress evidence obtained during law enforcement officers' warrantless search of his home on the basis that the officers were acting as community caretakers.

[¶ 2]  We hold the district court erred when it denied Gill's motion to suppress. The district court relied on the community caretaking doctrine.  The community caretaking doctrine, however, is inapplicable to Gill's case because the scope of an officer's community caretaking function does not encompass a dwelling place.  We, therefore, reverse the district court judgments.

## I

[¶ 3] This case stems from law enforcement officers' response to a single vehicle accident in which Gill drove his vehicle into a snowy ditch and left the scene of the accident with a neighbor who drove Gill home. Law enforcement located Gill's home, entered the home without a warrant, and subsequently charged Gill with driving under the influence of intoxicating liquor, driving while license is suspended, and unlawful display of a license or tab. Gill moved to suppress evidence obtained during the warrantless entry into his home.

[¶ 4] At a hearing on Gill's motion to suppress, law enforcement officers provided testimony that a passerby witnessed and reported a car accident east of Wilton the afternoon of December 2, 2006. The state radio dispatched that a vehicle went in a ditch and struck a tree. The dispatch said it was unknown whether any injuries resulted from the crash. Two officers responded to the dispatch.

[¶ 5] The first officer to arrive at the scene testified that it appeared the vehicle left the roadway, went in the snowy ditch, was airborne for a short distance, traveled up an embankment, and struck a tree. The vehicle's driver appeared to have attempted to get back on the road, but the vehicle was unable to reenter the roadway because there was too much snow. Nobody was at the scene when the officer arrived. The officer ran the vehicle's registration. The license plates did not match the vehicle. The plates were registered for a red Plymouth owned by one individual, while the vehicle in the ditch was a white Oldsmobile owned by a different individual.

[¶ 6] The passerby returned to the scene and spoke to the officer. The officer testified that the passerby indicated he witnessed the vehicle driving from shoulder to shoulder at forty-five degree angles before it went in the ditch; he pulled to the shoulder of the road because he was scared the vehicle was going to strike his vehicle; he observed one male occupant in the vehicle and someone who picked up the occupant in a two-tone Dodge pickup and left the scene; and he continued driving after witnessing the accident so he could call 911 from Wilton. The officers asked the passerby to make a written statement documenting his observations and send it to the officers.

[¶ 7] Another officer arrived on the scene. The officers began investigating nearby farmhouses. They saw a farm with a two-tone Dodge pickup in the yard. They entered the yard and spoke to an individual who said her husband had given their neighbor a ride home earlier in the evening. She pointed the officers toward Gill's farmstead.

[¶ 8] The officers drove to Gill's farmstead. They observed a light on in the house and pounded on the door for several minutes. Nobody answered the door. They walked past a picture window and could see what appeared to be a male sitting in a chair. They could only see the top of the individual's head from the window because of how the chair was situated. They started knocking on the window, then began pounding on the window when they received no response. The officers testified that they pounded on the window so hard they were concerned the window might break. The person in the chair was not moving at all. One of the officers called their supervisor and advised him of the situation. About one and one-half hours had passed from the time of the initial accident. The officers testified that they were concerned for the individual's welfare and received permission from their supervisor to enter the residence and check on the welfare of the individual.

[¶ 9] The officers testified that they went to the front door, entered the house, and said something along the lines of, "is anybody home?" and "hello, hello, anybody there?" They entered the room where the individual was sitting in the chair. They shook him several times before he became conscious. They noticed an extremely strong odor of alcoholic beverages. The officers asked him his name, and, after some conversation, Gill provided his driver's license to the officers. The officers testified that they asked Gill if he had been drinking. Gill said he blew a tire and went in the ditch. He told the officers he had not had anything to drink after going in the ditch. The officers asked Gill to count backwards, and Gill refused. The officers informed Gill of the implied consent statute. Gill refused testing and asked for an attorney. Gill was arrested for driving under suspension after the officers ran his license. The officers brought Gill outside of the house and gave him the implied consent advisory a second time. Gill agreed to a blood test, and the officers brought him to the hospital.

[¶ 10] At the conclusion of the suppression hearing, the district court judge denied the motion to suppress from the bench. The judge explained,

This is a rather unique issue .... we're usually talking about vehicles, community caretaking involving vehicles. We're not here talking about a felony. What we have here is an accident that the troopers were investigating. Their information is-or was that it was unknown whether there were injuries or not. So they proceeded to do their investigation; decided on a plan, according to the troopers, going to the various homes. They finally end up at the defendant's residence, knock, according to their reports, on the door, the window; according to their testimony, not only knock but pound on the window, pound

on the door. They could see there was somebody sitting in the chair. There was absolutely no response. Essentially, their concern at the time was not whether or not they needed to arrest somebody, but since there is no response, they determined that they should check with their sergeant to see if they should go into the home to check on the individual to see if there were injuries or if there is something wrong with this individual, and that's what they did.

And I think it probably could fall under community caretaking in this situation.

As far as any statements are concerned, Trooper Iverson testified that there were no statements made after arrest, and prior to that they were investigating the accident and then determined, once they were in the house, they could smell the alcohol on the defendant, they arrested him for driving under suspension at first and later on, driving under the influence.

So this is an interesting issue. And the motion to suppress will be denied at this point.

After the motion to suppress was denied, a jury trial was held. The jury found Gill guilty of driving under suspension, driving under the influence, and unlawful display of license plate or tab. Gill appeals. He asks that the order denying his motion to suppress be reversed and the cases dismissed because the warrantless entry into his home was constitutionally impermissible. Alternately, he asks that the convictions be reversed and remanded for a new trial, and that the suppression of any evidence obtained subsequent to the entry of his home be suppressed at the new trial.

II

[¶ 11] After resolving conflicting evidence in favor of affirming a district

court decision on a motion to suppress, this Court affirms the district court decision unless there is insufficient evidence to support the decision or the decision goes against the manifest weight of the evidence. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 6, 639 N.W.2d 478. This Court accords great deference to district court findings of fact in suppression matters. *Id.* The district court's legal conclusions are, however, fully reviewable. *State v. Huffman*, 542 N.W.2d 718, 720 (N.D.1996).

### III

[¶ 12] In his motion to suppress evidence, Gill asserted that any and all evidence gathered from and after the officers' entry into his home should be suppressed because the evidence was obtained unlawfully. He asserted the officers' entry into his home violated the Fourth Amendment to the United States Constitution and Article I, section 8 of the North Dakota Constitution, which prohibit unreasonable searches and seizures of individuals' homes.

██ [¶ 13] The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." A " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (citation omitted). "Warrantless searches are unreasonable unless they are within one of the few recognized exceptions to the requirement for a search warrant." *City of Jamestown v. Dardis*, 2000 ND 186, ¶ 9, 618 N.W.2d 495. "The burden is on the government to show a warrantless search is within an exception to the warrant requirement." *Id.*

██ [¶ 14] A warrantless search or seizure within a home is presumptively unreasonable. *State v. Keilen*, 2002 ND 133, ¶ 11, 649 N.W.2d 224. Here, however, the district court indicated that it denied Gill's motion to suppress on the basis that the law enforcement officers who entered Gill's home were acting in their community caretaking function. Community caretaking encounters "do not constitute Fourth Amendment seizures." *State v. Boyd*, 2002 ND 203, ¶ 6, 654 N.W.2d 392. Community caretaking can justify law enforcement contact without reasonable suspicion of unlawful conduct. *Keilen*, 2002 ND 133, ¶ 14, 649 N.W.2d 224. Community caretaking functions are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). It is a community caretaking contact, and "not a Fourth Amendment seizure[,] for a police officer to approach and talk with a person in a public place." *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 9, 571 N.W.2d 137. "For example, a [police officer's] approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992).

[¶ 15] Gill argues his motion to suppress should have been granted because, contrary to the district court order, the officers were not acting in their role as community caretakers when they entered his home. He contends that an officer cannot enter a home for the sole purpose of checking on the well-being of its inhabitants.

[¶ 16] The State argues that the district court properly denied Gill's motion to suppress. The State asserts the officers legally entered Gill's residence without a warrant. The State maintains the officers were acting as community caretakers because they had a reasonable belief that an emergency requiring their attention existed. The State argues the officers' actions were motivated by their concern for Gill's welfare.

[¶ 17] We have never held that the scope of officers' community caretaking function may extend to dwelling places. The majority of the community caretaking cases we have considered involve vehicles; only two cases discuss the application of the community caretaking doctrine to homes. *See Keilen,* 2002 ND 133, 649 N.W.2d 224; *State v. DeCoteau,* 1999 ND 77, 592 N.W.2d 579. In both cases concerning officers' entry into residential homes, law enforcement officers responded to anonymous tips reporting domestic disturbances. *See Keilen* at ¶¶ 18–19. By the time officers arrived at each of the homes, there was no disturbance. *See id.* In both *Keilen* and *DeCoteau,* we determined the community caretaking doctrine did not apply under the facts at issue. *See id.* at ¶¶ 17, 19. In *Keilen,* we concluded,

> In order to enter a home the police need a warrant or probable cause plus exigent circumstances. In this case, the police did not have a warrant and the trial court determined exigent circumstances did not exist. Because there was no disturbance when the officers arrived, and it was not discernible to the officers that anyone required assistance, the community caretaking function does not apply.

*Id.* at ¶ 19 (citations omitted). The Seventh, Ninth, Tenth, and Eleventh Circuits of the United States Court of Appeals have considered cases regarding the application of the community caretaking doctrine to the warrantless search of residential and commercial properties; each court declined to extend the community caretaking function of law enforcement officers to allow warrantless searches of private homes or businesses. *See United States v. McGough,* 412 F.3d 1232, 1238 (11th Cir. 2005) (stating, "we have never explicitly held that the community caretaking functions of a police officer permits the warrantless entry into a private home," and holding that officers' warrantless entry was not objectively reasonable when it was not justified by any compelling exigency); *United States v. Bute,* 43 F.3d 531 (10th Cir.1994) (refusing to extend community caretaking function to warrantless search of commercial garage); *United States v. Erickson,* 991 F.2d 529 (9th Cir.1993) (refusing to extend community caretaking function to warrantless search of private home); *United States v. Pichany,* 687 F.2d 204 (7th Cir.1982) (refusing to extend community caretaking function to warrantless search of warehouse); *but see United States v. Rohrig,* 98 F.3d 1506 (6th Cir. 1996) (holding officers' warrantless entry into home was reasonable and motivated by a community caretaking interest in quelling loud noise); *United States v. Nord,* 586 F.2d 1288 (8th Cir.1978) (holding that, in emergency situation, officers had a right to be on premises as part of their community caretaking function and their warrantless entry into home was constitutionally permissible).

[¶ 18] We now hold that a law enforcement officer's entry into a dwelling place cannot be justified alone on the basis that the officer is acting in a community caretaking capacity. We decline to extend the scope of the community caretaking doctrine to include officers' entry into private residences. The case in which the Supreme Court first articulated the community caretaking function, *Cady v. Dom-*

*browski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), was a case involving an automobile search. The Supreme Court, in concluding the warrantless search of the automobile was not unreasonable, noted its previous "recognition of the distinction between motor vehicles and dwelling places." *Id.* at 447–48, 93 S.Ct. 2523.

The reason for this well-settled distinction is twofold. First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.

*South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (citations omitted). We agree with this distinction and hold that the warrantless entry of law enforcement officers into a home presents a Fourth Amendment issue and should not be examined under the community caretaking doctrine. Thus, we conclude the district court erred when it denied Gill's motion to suppress on the basis that the officers were acting as community caretakers when they entered Gill's home.

## IV

[¶ 19] Gill argues the emergency exception to the Fourth Amendment warrant requirement should not apply to the officers' entry into his home. "The emergency doctrine allows police to enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress." *City of Fargo v. Ternes*, 522 N.W.2d 176, 178 (N.D.1994). This Court has applied the emergency doctrine when officers have a reasonable belief a situation involves a serious threat to an individual's health. *State v. Nelson*, 2005 ND 11, ¶ 13, 691 N.W.2d 218.

[¶ 20] We have said that the emergency exception may be applied when the following requirements are met:

(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Nelson*, 2005 ND 11, ¶ 12, 691 N.W.2d 218. An objective standard is used to determine whether an officer reasonably believed an emergency existed. *Id.* Whether an objective officer would believe an emergency existed is a question of fact. *See id.* at ¶ 15.

[¶ 21] Here, Gill argues the emergency doctrine was not argued below, and the State should not be able to argue that it applies on appeal. In its oral argument, the State conceded it did not argue the emergency doctrine below. We will not consider for the first time on appeal issues which are not raised before the district court. *State v. Kieper*, 2008 ND 65, ¶ 16, 747 N.W.2d 497 (declining to consider constitutional issue on appeal because the underlying "facts may be lacking if we allow the State to make the argument for the first time on appeal" and the defendant would "be denied the opportunity to pres-

ent evidence in response, to cross-examine witnesses on testimony that may support the new theory, or to argue before the district court the theory's invalidity or inapplicability").

[¶ 22] The State bore the burden of showing the warrantless search of Gill's home was within an exception to the Fourth Amendment warrant requirement. The State failed to raise the issue in the district court, and, therefore, it was not properly preserved for review. We decline to hold, as a matter of law, that these circumstances fulfill the requirements for applying the emergency doctrine. We, therefore, will not decide on appeal whether the emergency exception to the warrant requirement applies to the officers' entry into Gill's home.

V

[¶ 23] The community caretaking doctrine is inapplicable to Gill's case because the scope of an officer's community caretaking function does not encompass dwelling places. We hold the district court erred when it denied Gill's motion to suppress on the basis that the officers entered Gill's home in their role as community caretakers. Because the State did not raise the emergency doctrine exception in the district court, we will not address the issue on appeal. We, therefore, reverse the district court judgments.

[¶ 24] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 25] The majority says, at ¶ 18, "We now hold that a law enforcement officer's entry into a dwelling place cannot be justified alone on the basis that the officer is acting in a community caretaking capacity." The majority's application of this as-

serted principle reflects its belief that the community caretaking exception cannot be applied to a dwelling place. In doing so, it misinterprets the federal constitutional law. I therefore respectfully dissent.

[¶ 26] Acting in a community caretaking capacity is an exception to the warrant requirement of the Fourth Amendment. *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The United States Supreme Court has not excluded the community caretaking exception's application to dwellings; other federal courts have repeatedly recognized the application of the community caretaking exception to dwellings. *E.g., United States v. Quezada*, 448 F.3d 1005, 1007 (8th Cir.2006) ("A police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention."); *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir.2005) (applying the community caretaking principles to entry of residence). No court has said that the exception is inapplicable to dwellings, although courts have on occasion said the exception did not apply under the facts of a particular case. *See, e.g., United States v. McGough*, 412 F.3d 1232, 1239 (11th Cir.2005).

[¶ 27] Separated from the detection of crime is the police officers' duty of promoting public safety and rendering needed assistance. *See, e.g., City of Troy v. Ohlinger*, 438 Mich. 477, 475 N.W.2d 54 (1991) (a police officer was justified as part of community caretaker function to enter defendant's home after receiving information about defendant's driving away after a car accident, holding his head as if injured, and, after shining his flashlight into defendant's bedroom, seeing defendant bleeding and not moving); *People v. Davis*, 442 Mich. 1, 497 N.W.2d 910, 920 (1993) (opining "that rendering aid to persons in dis-

tress is one of the community caretaking functions of the police" and "that entries made to render aid to a person in a private dwelling were part of the community caretaking function"); *State v. Mason*, 2008 WL 2512811, ¶ 8 (Wis.App.2008) ("We have held that police may, in certain circumstances, conduct an entry and seizure within the meaning of the Fourth Amendment, provided that the seizure based on community caretaker function is reasonable."); *United States v. York*, 895 F.2d 1026, 1030 (5th Cir.1990) (concluding officers' role as community caretakers allowed them to enter a residence in order to keep the peace).

[¶ 28] DALE V. SANDSTROM