*330 Marilyn Kelly, J.
(dissenting). In my view, the majority’s decision today extends the communitycaretaking exception to the Fourth Amendment warrant requirement beyond discernable limitation. Therefore, I respectfully dissent.
I would affirm the Court of Appeals’judgment, which affirmed the trial court’s decision to grant defendant’s motion to suppress. However, I would do so based on a different analysis than that used by the Court of Appeals. Consistently with many other courts that have considered the issue, I would hold that the communitycaretaking exception to the Fourth Amendment warrant requirement cannot justify a warrantless entry into a private residence. Because the majority concludes otherwise without a sufficient legal basis for doing so, I cannot join its opinion.
I. LEGAL BACKGROUND
The Fourth Amendment of the United States Constitution protects the people from unreasonable searches and seizures.[1] The Michigan Constitution contains a similar protection.[2] Both constitutional provisions require a warrant supported by probable cause for searches and seizures to be reasonable, and therefore constitutional, unless an exception to the warrant requirement applies.[3]
A person’s home is entitled to the most heightened Fourth Amendment protection.[4] Thus, a warrantless *331 entry into a home is presumptively unreasonable.[5] It violates the Fourth Amendment unless an exception to the warrant requirement exists.
A. EXCEPTIONS TO THE WARRANT REQUIREMENT GENERALLY
Exceptions to the warrant requirement generally relate to two important functions of law enforcement and other state actors: criminal-investigation functions and so-called “community-caretaking” functions. The exceptions for criminal-investigation functions exist because sometimes obtaining a warrant is impracticable due to the need to act expeditiously when investigating criminal activity.
Such exceptions include searches incident to lawful arrests[6] and searches conducted because of the existence of exigent circumstances, for instance, when the police are pursuing a fleeing felon.[7] Neither party to this case asserts that the warrantless entry into defendant’s home occurred in the course of investigating criminal activity. Thus, none of the warrant exceptions under the criminal-investigation umbrella justify the entry.
Other exceptions to the warrant requirement further the government’s interest in protecting individuals or the general public from harm. These exceptions relate to the community-caretaking functions of state actors. They are “totally divorced from the detection, investi *332 gation, or acquisition of evidence relating to the violation of a criminal statute.”[8] For example, an official’s community-caretaking functions justify the inventory exception to the warrant requirement, which allows searches conducted according to established police procedures.[9] Community-caretaking functions also include the administration of emergency aid,[10] which provides another exception to the warrant requirement.
The firefighters in this case were investigating a potential water leak and electrical problem,[11] which is “totally divorced” from any criminal investigation. However, several of the exceptions to the warrant requirement that form part of the government’s community-caretaking functions are implicated under the facts of the instant case.
Yet determining that this case implicates the community-caretaking functions of governmental actors answers only the beginning of the inquiry. As previously stated, the community-caretaking function is the foundational premise for several exceptions to the warrant requirement. Three such exceptions are significant to this case and will be discussed herein: the general community-caretaking exception, the emergency exception,[12] and the emergency-aid exception.
*333 In discussing these exceptions, one essential distinction is paramount. Although all the exceptions fall under the rubric of an official’s community-caretaking functions, they involve different circumstances, and different standards are used in assessing their application.[13] Thus, although the exercise of communitycaretaking functions involves many different factual circumstances, warrantless entries pursuant to the community-caretaking exception are justified in only a narrow subset of those circumstances.
B. THE “COMMUNITY-CARETAKING,” “EMERGENCY,” AND “EMERGENCY-AID” EXCEPTIONS
As the majority correctly states, one exception to the warrant requirement is the search of a vehicle conducted as part of a police officer’s communitycaretaking functions.[14] This exception, first established in Cady v Dombrowski, is commonly referred to as the community-caretaking exception to the warrant requirement.[15]
*334 A related exception also involves the exercise of community-caretaking functions, but is grounded on the need for immediate action by police or firefighters to address emergency situations.[16] This exception is sometimes subdivided into the emergency exception and the emergency-aid exception.[17]
Unfortunately, the scope of these exceptions is far from clear. Consequently, courts across the country have rendered vastly different decisions about the proper application of the community-caretaking, emergency, and emergency-aid exceptions.[18] These anomalous results stem primarily from conflicting nomenclature regarding the exceptions.[19] The South Dakota Supreme Court recently summarized this confusion:
A review of the caselaw reveals a breadth of decisions discussing and applying various exceptions including the *335 emergency doctrine, the emergency aid doctrine, and the community caretaker doctrine.
Some of the avowed distinctions between these three doctrines can be frail, bordering on the meaningless. Neither have they been consistently applied, thus creating contradictory and sometimes conflicting doctrines. Some courts treat these exceptions interchangeably. Others declare that the community caretaker exception applies, but then use law applicable to one of the other exceptions, such as the emergency doctrine.[20]
Pursuant to Michigan v Tyler and Brigham City v Stuart,[21] it is well settled that police and firefighters may enter a private residence without a warrant in emergency circumstances. Such circumstances include, at a minimum, responding to a fire in progress and assisting injured persons in need of medical treatment.[22] However, the law remains unclear regarding the proper application of the warrant exception to actions conducted pursuant to community-caretaking functions that are not in response to an emergency situation. The United States Supreme Court has not seen fit to extend the community-caretaking exception established in Cady beyond the context of automobile searches. This, in my view, should be the starting point for the Court’s analysis in this case.
II. ANALYSIS
The majority does not wade into this judicial morass. Instead, it ignores it, proceeding as if the law is clear and dictates its result. In so doing, it does precisely *336 what State v Deneui cautioned against: creating contradictory and conflicting doctrines using inconsistent language.[23]
For example, the majority proclaims that “the community caretaking exception applies to firefighters .. . when they are responding to emergency situations that threaten life or property.”[24] This is a correct characterization of the scope of the emergency exception to the warrant requirement, not of the community-caretaking exception.
However, the majority also states that, as long as the entry was “an exercise of [the state actor’s] community caretaking functions,” courts need assess only the reasonableness of the entry.[25] This suggests that a firefighter’s entry into a residence pursuant to a communitycaretaking function absent any imminent threat would be sanctioned as long as a court determines the entry was reasonable. This standard could conceivably be characterized as a wholly independent communitycaretaking exception along the lines of that created by the United States Supreme Court in Cady.
However, the majority lacks an adequate legal basis for extending the community-caretaking exception discussed in Cady to entries of residences generally and to the facts of this case specifically. The majority relies almost exclusively on the United States Supreme Court decision in Tyler and our decision in People v Davis.[26] As I will explain, the majority’s reliance on those decisions is unfortunate. Tyler is of nominal usefulness, and *337 Davis suggests a result opposite to that reached by the majority.
A. DOES THE COMMUNITY-CARETAKING EXCEPTION JUSTIFY WARRANTLESS ENTRIES INTO PRIVATE RESIDENCES?
The majority recognizes that the privacy of the home stands at the very core of the Fourth Amendment’s protection against unreasonable searches and seizures. But it assumes without analysis that warrantless entries into a private residence to engage in communitycaretaking functions are permissible if reasonable.[27] I cannot agree. The majority’s conclusion assumes, without deciding, what should be the threshold question.
1. TYLER DOES NOT SUPPORT THE MAJORITY’S HOLDING
The United States Supreme Court’s decision in Tyler did not cite or discuss Cady, the seminal case that created the community-caretaking exception. Nor do the words “community caretaking” appear anywhere in Tyler. Rather, Tyler is typically viewed as involving the emergency exception to the warrant requirement.[28] Yet the majority uses Tyler as a central basis for its holding interpreting a warrant exception that Tyler never mentioned. Reliance on a case involving one exception to the warrant requirement to formulate the parameters of another exception to the warrant requirement is erroneous.[29]
*338 Tyler held that “[a] burning building clearly presents an exigency of sufficient proportions to render a warrantless entry ‘reasonable.’ ”[30] Courts construing Tyler have generally read this exception to the warrant requirement narrowly, confining it to situations involving an imminent need for police intervention to protect life or property.[31] Many courts have also noted that the critical *339 inquiry is “whether there is a ‘true immediacy’ that absolves an officer from the need to apply for a warrant and receive approval from an impartial magistrate.”[32]
Thus, Tyler provides a basis for concluding that firefighters may enter onto property without a warrant under emergency circumstances, such as to fight a fire in progress. However, the majority reads more into Tyler by concluding that it “lead[s] inexorably to the conclusion that the community caretaking exception applies to firefighters.”[33] This conclusion is simply wrong. It stretches Tyler’s holding far beyond what that opinion actually said. In fact, Tyler only leads “inexorably” to the conclusion that firefighters may enter a burning building in order to fight a fire in progress.
Because Tyler did not discuss the communitycaretaking exception, much less establish rules for its application, the majority should not have placed such reliance on it. Finally, as I explain later, I do not believe that the prosecution in this case established a factual record that justified a warrantless entry under any exception to the warrant requirement.[34]
2. DAVIS DOES NOT SUPPORT THE MAJORITY’S DECISION
With Tyler properly limited to emergency situations, the majority opinion is left to relying solely on our decision in Davis. But Davis does not support it either.
Davis explicitly stated that its holding was based on the emergency-aid exception, not the communitycaretaking exception.[35] Thus, its discussion of the *340 broader community-caretaking exception is dicta and is not binding on this Court. Nonetheless, to the extent that Davis is informative here, it points to a result the opposite of that reached by the majority.
Davis involved the warrantless entry of a hotel room by police officers after they received reports of gunshots being fired. In its discussion of community-caretaking functions, the Court was extremely careful to note the significant difference in privacy interests between a car and a dwelling.[36] The Davis Court ultimately held that the warrantless entry in that case could not be justified under the emergency-aid exception.[37] Once the Davis Court so held, it did not make an independent community-caretaking analysis to determine whether the warrantless entry could be justified on that basis.
Hence, Davis created a sliding scale for assessing the reasonableness of searches undertaken on the basis of community-caretaking functions. Because of the greater Fourth Amendment protections afforded to *341 residences, there are few community-caretaking functions that would justify a warrantless search of a residence under Davis. Only when governmental officials act to address an emergency and their actions meet the standard for the emergency or emergency-aid exceptions is a warrantless entry into a home proper.[38]
Two Michigan cases, People v Toohey and People v Krezen, have discussed the community-caretaking function of police officers in upholding automobile searches under the inventory exception to the warrant requirement.[39] The Toohey Court surveyed the United States Supreme Court’s decisions in Cady and South Dakota v Opperman.[40] It noted that inventory searches of automobiles satisfy the Fourth Amendment’s “reasonableness” requirement if they are “conducted pursuant to standardized police procedure . . . .”[41] Although Toohey and Krezen discussed the community-caretaking functions of the police in impounding automobiles, neither decision discussed an independent communitycaretaking exception to the warrant requirement.
In sum, no decision from this Court has expressly defined the parameters of a community-caretaking ex *342 ception to the warrant requirement. Krezen, Toohey, City of Troy v Ohlinger, and Davis all discussed the community-caretaking functions of law enforcement officers.[42] But in none of those cases did the Court uphold a warrantless entry or search on the basis of the community-caretaking exception. Rather, the Krezen and Toohey decisions relied on the inventory exception. The Ohlinger and Davis decisions relied on, and fashioned a test for the application of, the emergency-aid exception. Therefore, this Court has no controlling authority on point.
3. SURVEY OF OTHER JURISDICTIONS
Tyler and Davis do not support, much less mandate, the majority’s result. Because there is no controlling Michigan authority, I turn to other jurisdictions for guidance. Many courts have observed that the Cady decision included language that sharply distinguished automobile searches from searches of private residences.[43] Therefore, they have limited the community-caretaking exception solely to the former.[44] Recently, the United States Court *343 of Appeals for the Third Circuit joined the majority of other federal circuits and adopted this approach:
We agree with the conclusion of the Seventh, Ninth, and Tenth Circuits on this issue, and interpret the Supreme Court’s decision in Cady as being expressly based on the distinction between automobiles and homes for Fourth Amendment purposes. The community caretaking doctrine cannot be used to justify warrantless searches of a home. Whether that exception can ever apply outside the context of an automobile search, we need not now decide. It is enough to say that, in the context of a search of a home, it does not override the warrant requirement of the Fourth Amendment or the carefully crafted and well-recognized exceptions to that requirement.[45]
Numerous other courts have tacitly rejected extending the community-caretaking exception to warrantless entries into private residences.[46] Similarly, others have *344 evaluated the warrantless entry under the emergency or emergency-aid exceptions only and, finding them inapplicable, declared the entry unconstitutional without considering a broader community-caretaking exception.[47]
Cases from jurisdictions in which the courts have ostensibly permitted warrantless entries into private residences pursuant to the community-caretaking exception are also instructive. For example, in United States v Quezada,[48] the Eighth Circuit upheld a warrantless entry into the defendant’s apartment. The Quezada Court stated that “[a] police officer may enter a residence without a warrant as a community caretaker where the officer has a reasonable belief that an emergency exists requiring his or her attention.”[49]
Thus, the warrantless entry in that case, like the entries in Tyler and Mincey v Arizona, was premised on an emergency situation, not simply that the officer was acting in a community-caretaking capacity.[50] Many other cases that purportedly allowed warrantless entries into homes under the community-caretaking exception similarly relied on the fact that an emergency situation was involved.[51]
*345 Cases like Quezada persuasively illustrate how the law pertaining to the community-caretaking exception, the emergency exception, and the emergency-aid exception are often muddled. Courts often confuse a police officer’s actions pursuant to a community-caretaking function with the community-caretaking exception to the warrant requirement. Moreover, these cases also reveal the dearth of authority for a communitycaretaking exception to the warrant requirement that applies to homes independently of the emergency or emergency-aid exceptions.
The majority ignores all of this and assumes, without really deciding the issue, that community-caretaking duties can justify a warrantless entry into a private residence. This assumption is precariously based, given the dearth of authority to support it. I would hold that, to the extent an independent community-caretaking exception to the warrant requirement may be recognized in Michigan, it cannot justify a warrantless entry into a private residence. Rather, such entries must be justified by another exception, such as the emergency or emergency-aid exceptions discussed in Tyler and Davis.
4. THE MAJORITY’S MISCONSTRUCTION OF FOURTH AMENDMENT PROTECTIONS
The majority’s articulation of the general legal principles applicable to this case is generally accurate. For example, I do not dispute that the touchstone of Fourth Amendment analysis is reasonableness. The problem is that the majority opinion restricts itself to general legal principles. Indeed, a simple reason exists why the majority does not answer my refutation of Tyler and Davis as a basis for its holding or my discussion of the other caselaw: it cannot. Instead, it attempts to distract from this failure by dismissing my opinion as “bemoan *346 [ing]” the state of the law in this area.[52] The majority also claims that my approach would “further muddle Fourth Amendment doctrine . . . .”[53] To the contrary, my analysis fully examines and evaluates the existing nuances in Fourth Amendment doctrine recognized by courts across the country, including this one. Such nuances are lost on the majority.
If, as the majority asserts, my understanding of these nuances is “needlessly complex,”[54] so too is the understanding of countless other judges and commentators. Contrary to the majority’s assertion, the emergency and emergency-aid exceptions are not merely “aspects” of the community-caretaking exception.[55] As previously explained, the community-caretaking functions of police and other state actors provide the basis for several distinct exceptions to the warrant requirement. These exceptions include the inventory exception, the emergency exception, and the emergency-aid exception.[56] *347 Each exception is subject to a different standard for assessing whether a warrantless entry or search conducted pursuant to that exception was reasonable.[57]
The majority opinion falls short because it creates out of whole cloth a previously unrecognized communitycaretaking exception to the warrant requirement. Its wholly unsupported decision not only to adopt that exception but to extend it to warrantless entries into private residences compounds this error. Moreover, the majority refuses to recognize that its stated standard for this new exception is the essence of the standard for the emergency exception to the warrant requirement. Implicit in this *348 failure is the inevitable conclusion that, under the majority’s new exception, warrantless entries into a home to perform nonemergency communitycaretaking functions can be reasonable.[58]
In sum, the majority’s opinion today (1) extinguishes the emergency and emergency-aid exceptions to the warrant requirement in Michigan by creating a broader community-caretaking exception with no discernable limitation,[59] (2) exposes the perils of distilling broad Fourth Amendment principles from inapposite authority and without comprehensive analysis, (3) pays only lip service to United States Supreme Court precedent emphasizing the difference between the home and a vehicle,[60] (4) ignores the United States Supreme Court’s admonition that the warrant requirement is subject only to specifically established and well-delineated exceptions,[61] (5) directly contravenes Davis by applying a general reasonableness standard to all warrantless entries carried out to perform community-caretaking *349 functions,[62] and (6) fails to explain which communitycaretaking functions, beyond responding to an emergency or administering emergency aid, would reasonably justify a warrantless entry into a home.[63]
B. DOES THE COMMUNITY-CARETAKING EXCEPTION APPLY TO FIREFIGHTERS?
This portion of the majority’s holding is unique.[64] No jurisdiction has extended the community-caretaking exception to the warrant requirement to firefighters.
*350 As previously mentioned, Tyler established that firefighters are entitled to enter private residences without a warrant in emergency situations, including fighting a blazing fire. Stuart makes clear that police may enter homes to render emergency aid to someone inside in clear need of medical treatment.[65] Both of these exceptions are subsumed within the broader rubric of community-caretaking functions.
Because I would not allow the community-caretaking exception to justify warrantless entries into private residences by any state actors, I would not reach this issue. However, under the majority’s broad new community-caretaking exception, firefighters and police officers may effectively enter private residences at any time and for virtually any reason without a warrant.
C. APPLICATION TO THIS CASE
Under existing law, the firefighters in this case were permitted to enter defendant’s townhouse only to combat an ongoing emergency. The thin factual record precludes the conclusion that a reasonable person could have believed that an emergency existed in defendant’s townhouse. At best, the facts establish that a potential fire threat existed in the townhouse neighboring defendant’s, which belonged to Kathleen Tunner.
The only facts that the firefighters responding to Tunner’s phone call knew when they entered defendant’s home were that (1) Tunner had observed water running over her electrical box and (2) she thought that she heard water running between the common wall her *351 townhouse shared with defendant’s townhouse. As the majority observes, Royal Oak Fire Department Lieutenant Michael Schunck testified that he did not independently confirm that water was running in Tunner’s home. Hence, he did nothing to respond to the only possible emergency of which he was aware when he arrived — a potential fire hazard in Tunner’s townhouse.[66]
In concluding to the contrary, the majority discounts the legal principle that a warrantless entry into a home is presumptively unreasonable.[67] The government bears the burden of proving that a “ ‘carefully delineated’ ” exception to the warrant requirement applies.[68]
Indeed, the facts justifying the entry in this case are significantly less compelling than those present in Davis. In Davis, the police had received a radio dispatch informing them that the manager at a motel had reported hearing gunshots fired in or near one of two motel rooms. The dispatcher identified two possible rooms and directed police officers to a possible witness, but did not suggest that any person was injured. With this dispatch as their only source of information, the police arrived at the motel and proceeded to one of the two rooms. Once there, they encountered an occupant who was unwilling to open the door.
Notably, the police had not themselves heard shots fired. Nor did they interview any witnesses who heard *352 them, not even the desk clerk, whom the dispatcher had identified as the source of the information. The initial source of information gave very little detail about the situation. The record did not indicate that the police made inquiries of the manager who approached them or that they knocked on other doors. They encountered no circumstances that suggested that shots had in fact been fired. Under these facts, the Davis Court unanimously refused to apply the emergency-aid exception to uphold the warrantless entry.
Thus, Davis involved a situation in which gunshots had been fired — a situation specifically recognized by courts as falling within the emergency exception.[69] Yet the Davis Court refused to apply the exception absent police corroboration of the shots independent of the phone call.
This case involves an alleged water leak and potential electrical problem — not a scenario specifically recognized as falling within the emergency exception. Just as in Davis, however, the warrantless entry was carried out without any independent corroboration that water was actually leaking and causing a potential electrical problem in defendant’s home. If there was no water leaking, there was no electrical problem and hence no emergency or imminent threat to life or property. Therefore, there was no exception to the warrant requirement that justified the warrantless entry in this case.
The majority concludes to the contrary by establishing a broad, undefined new community-caretaking exception to the warrant requirement wholly unsupported by existing law. Indeed, the scope of the majority’s newly created exception to the warrant requirement is limitless.
*353 Finally, I question the legal significance of at least one of the facts the majority finds significant when evaluating the reasonableness of the warrantless entry. The majority contends that because the townhouse complex contained several units attached to one another, this fact “elevated the imminence of the potential hazard.”[70] Not so. Certainly, the fact that the townhouse complex has numerous attached units elevated the potential scope of the fire threat and the number of people who potentially might have been affected. But that fact is utterly irrelevant to the imminence of a fire threat from water running over an electrical box. The question of the imminence of a fire might be influenced by whether someone saw sparks flying from the box or saw a large quantity of water flowing over it. But the scope of the threat and the imminence of the threat are distinctly different inquiries.
For these reasons, I agree with the Court of Appeals’ conclusion that it is impossible to determine whether the firefighters acted reasonably in entering defendant’s apartment. Thus, I would hold that the prosecution did not meet its burden of establishing that an exception to the Fourth Amendment warrant requirement justified the firefighters’ entry.
III. CONCLUSION
I dissent from the majority’s decision to extend the community-caretaking exception to the warrant requirement to allow entry into private residences. I would hold that firefighters, as well as police officers, may enter a private residence only pursuant to the emergency and emergency-aid exceptions. The prosecution failed to establish a record indicating that the *354 firefighters in this case reasonably believed that immediate entry into defendant’s townhouse was necessary to address an emergency situation. Therefore, I would affirm the judgment, but not the reasoning, of the Court of Appeals.
Cavanagh, J., concurred with Marilyn Kelly, J.

 US Const, Am IV

 Const 1963, art 1, § 11.

 See Katz v United States, 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967).

 See Silverman v United States, 365 US 505, 511; 81 S Ct 679; 5 L Ed 2d 734 (1961) (“At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from *331 unreasonable governmental intrusion.”); see also Kyllo v United States, 533 US 27, 37; 121 S Ct 2038; 150 L Ed 2d 94 (2001) (“In the home, our cases show, all details are intimate details, because the entire area is held safe from prying government eyes.”).

 See, e.g., Welsh v Wisconsin, 466 US 740, 750; 104 S Ct 2091; 80 L Ed 2d 732 (1984), citing Payton v New York, 445 US 573, 586; 100 S Ct 1371; 63 L Ed 2d 639 (1980).

 Arizona v Gant, 556 US 332; 129 S Ct 1710; 173 L Ed 2d 485 (2009).

 United States v Santana, 427 US 38, 41-43; 96 S Ct 2406; 49 L Ed 2d 300 (1976).

 Cady v Dombrowski, 413 US 433, 441; 93 S Ct 2523; 37 L Ed 2d 706 (1973).

 South Dakota v Opperman, 428 US 364, 368-372; 96 S Ct 3092; 49 L Ed 2d 1000 (1976).

 People v Davis, 442 Mich 1, 25; 497 NW2d 910 (1993).

 For the reasons explained in part 11(C) of this opinion, the majority’s characterization of the circumstances here as an “imminent threat of fire,” ante at 317, is inapt.

 There is some disagreement over whether the emergency exception is justified by community-caretaking considerations or by exigent circumstances. See, e.g., State v Deneui, 2009 SD 99, ¶ 22; 775 NW2d 221, 232 (2009) (“Several courts have also held that the emergency aid doctrine is *333 a subcategory of the community caretaker exception, while the emergency doctrine is a subcategory of the exigent circumstances exception.”).
However, in Davis, this Court made clear that the exigent-circumstances exception involves actions pursuant to criminal investigation. Davis, 442 Mich at 24. As previously noted, it is undisputed that the entry in this case did not occur in the course of an investigation of criminal activity.

 See id. at 25 (“Although administering emergency aid is referred to as one of the community caretaking functions of the police, this should not have any effect on the law governing the emergency aid exception. While categorizing these different activities under the heading of ‘community caretaking functions’ may be useful in some respects, it does not follow that all searches resulting from such activities should he judged by the same standard.”).

 Cady, 413 US at 448.

 See, e.g., United States v Sanchez, 612 F3d 1, 4 n 2 (CA 1, 2010) (citing Cady for the proposition that “[t]he community caretaking *334 exception to the Fourth Amendment’s warrant requirement allows the police to impound a vehicle for noninvestigatory purposes when it is reasonable to do so,” and giving as an example “to remove an impediment to traffic or to protect a vehicle from theft or vandalism”); United States v Johnson, 410 F3d 137, 143-144 (CA 4, 2005) (noting that Cady established the community-caretaking exception in the context of automobile searches).

 Michigan v Tyler, 436 US 499; 98 S Ct 1942; 56 L Ed 2d 486 (1978) (stating that no warrant is required for firefighters to enter a residence to fight a fire in progress); Brigham City v Stuart, 547 US 398, 403; 126 S Ct 1943; 164 L Ed 2d 650 (2006) (stating that no warrant is required for police to enter a residence “to assist persons who are seriously injured or threatened with such injury”).

 See, e.g., Deneui, 2009 SD 99, at ¶ 28; 775 NW2d at 234.

 The majority overlooks the fact that virtually all courts and commentators recognize that a distinction exists between these exceptions, even if they sometimes confuse them when applying them. Thus, I ask the majority, does the need to “establish clear principles of law,” ante at 327, outweigh our obligation to get those principles right?

 See, e.g., Decker, Emergency circumstances, police responses, and Fourth Amendment restrictions, 89 J Crim L & Criminology 433,441-444 (1999) (hereinafter Decker, Emergency circumstances).

 Deneui, 2009 SD 99, at ¶¶ 21-22; 775 NW2d at 232.

 Tyler, 436 US 499; Stuart, 547 US 398.

 It is undisputed that there was no fire in progress or injured person in need of medical treatment in this case.

 Deneui, 2009 SD 99, at ¶ 22; 775 NW2d at 232.

 Ante at 306; see also ante at 325 (“The Fourth Amendment does not ' prevent firefighters responding to emergency calls from undertaking their duty to protect the public from imminent danger.”).

 Ante at 317.

 Tyler, 436 US 499; Davis, 442 Mich 1.

 See ante at 319.

 See, e.g., Mincey v Arizona, 437 US 385, 392; 98 S Ct 2408; 57 L Ed 2d 290 (1978) (stating that “[w]e do not question the right of the police to respond to emergency situations” by making warrantless entries and searches and citing Tyler)-, see, generally, Decker, Emergency circumstances, pp 441-444 (1999).

 The general rule is that “searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se *338 unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.” Katz, 389 US at 357 (citations omitted) (emphasis added).

 Tyler, 436 US at 509.

 As noted, the United States Supreme Court has recognized as emergencies entry to fight a fire in progress and to provide immediate medical treatment (also termed the “emergency aid” exception). See Tyler, 436 US 499, and Stuart, 547 US 398.
Some federal and state courts have taken a more expansive view of what constitutes an emergency. Those courts have upheld warrantless entries under this exception to locate missing persons, stop a burglary in progress, and to respond to gunshots fired. See, e.g., People v Wharton, 53 Cal 3d 522; 280 Cal Rptr 631; 809 P2d 290 (1991) (upholding entry of a residence to locate a missing individual); Carroll v State, 335 Md 723, 731-732; 646 A2d 376 (1994) (citing federal and state cases upholding warrantless entries when the police reasonably believed that a burglary was in progress or had recently been committed); Davis, 442 Mich at 28 (assuming without deciding that, in most cases, the sound of gunfire could justify warrantless entry into a motel room under the emergency-aid doctrine).
By contrast, the authority supporting a warrantless entry under facts similar to those presented here is both scarce and dubious. A few cases have allowed warrantless entries in cases involving water leaks. See State v Dube, 655 A2d 338 (Me, 1995) (holding lawful a warrantless entry to combat a plumbing emergency and stop sewage or water from leaking into apartments below); United States v Boyd, 407 F Supp 693, 694 (SDNY, 1976) (upholding a warrantless entry when water was leaking from the defendant’s apartment into the apartment below and the officer heard water running in defendant’s apartment). But see United States v Rohrig, 98 F3d 1506, 1520 n 6 (CA 6, 1996) (questioning Dube’s conclusion that the warrantless entry was not a “search” for Fourth Amendment purposes); United States v Williams, 354 F3d 497, 508 (CA 6, 2003) (“Unlike the situations in Rohrig, Boyd, and Dube where the problem the police sought to address was certain, the possible water leak in this case was only speculative.”).

 United States v Washington, 573 F3d 279, 288 (CA 6, 2009).

 Ante at 319.

 See part II(C) of this opinion.

 Davis, 442 Mich at 9 n 4 (“Even though we resolve this case on the basis of the emergency aid doctrine, the Court of Appeals assertion that *340 the community caretaker function is a subcategory of the exigent circumstances doctrine requires a more general clarification of the exceptions to the warrant requirement.”) (emphasis added); id. at 25 (“Accordingly, we hold that when the police are investigating a situation in which they reasonably believe someone is in need of immediate aid, their actions should be governed by the emergency aid doctrine, regardless of whether these actions can also be classified as community caretaking activities.”) (emphasis added).

 Id. at 25 (“Although, for example, inventory of a car and entry into a dwelling may both be categorized as ‘caretaking functions,’ it does not follow that both types of activities should be judged by the same standard. It is particularly important to note that the levels of intrusion the police make while performing these functions are different. For example, a police inventory of a car is much less intrusive than a police entry into a dwelling.”).

 Cf. City of Troy v Ohlinger, 438 Mich 477, 483; 475 NW2d 54 (1991) (upholding a warrantless entry into a home after an officer observed a man inside bleeding and not moving in order “to determine if [medical] assistance was required”).

 Davis, 442 Mich at 25-26 (“[W]e hold that police may enter a dwelling without a warrant when they reasonably believe that a person within is in need of immediate aid. They must possess specific and articulable facts that lead them to this conclusion.”); see also State v Ryon, 137 NM 174, 185; 108 P3d 1032 (2005) (“Since the privacy expectation is strongest in the home, only a genuine emergency will justify entering and searching a home without a warrant and without consent or knowledge.”).

 People v Toohey, 438 Mich 265, 273-276; 475 NW2d 16 (1991) (citing Cady for the proposition that “the United States Supreme Court has determined that the impoundment and subsequent inventory search of a vehicle is constitutionally valid as part of the caretaking function performed by the police”); People v Krezen, 427 Mich 681, 687; 397 NW2d 803 (1986).

 Toohey, 438 Mich at 273-277, citing Cady, 413 US 433, and Opperman, 428 US 364.

 Toohey, 438 Mich at 275-276.

 Krezen, 427 Mich 681; Toohey, 438 Mich 265; Ohlinger, 438 Mich 477; Davis, 442 Mich 1.

 See, e.g., United States v Erickson, 991 F2d 529, 532 (CA 9, 1993) (“Although it involved a community caretaking function, Cady clearly turned on the ‘constitutional difference’ between searching a house and searching an automobile.”) (quotation marks and citations omitted).

 United States v Pichany, 687 F2d 204, 207-209 (CA 7, 1982); Erickson, 991 F2d at 532; United States v Bute, 43 F3d 531, 535 (CA 10, 1994); State v Gill, 2008 ND 152, ¶ 23; 755 NW2d 454, 459 (2008); Ryon, 137 NM at 185.
The United States Court of Appeals for the Eleventh Circuit similarly, declined to allow an entry into a private residence pursuant to the community-caretaking exception. United States v McGough, 412 F3d 1232, 1239 (CA 11, 2005). However, it is unclear whether McGough was limited to the facts before the court or whether it established a categorical rule for searches of private residences. Several courts have cited *343 McGough for the proposition that the Eleventh Circuit, like the Seventh, Ninth, and Tenth Circuits, has declined to extend the communitycaretaking exception to allow warrantless searches of private homes or businesses. See, e.g., Gill, 2008 ND 152, at ¶ 17; 755 NW2d at 459.
The United States Court of Appeals for the Sixth Circuit has applied the community-caretaking exception to allow a warrantless entry of a home in order to abate a nuisance. See Rohrig, 98 F3d 1506. However, the Rohrig court placed great emphasis on “the fact-specific nature of this holding,” Rohrig, 98 F3d at 1525 n 11, leaving doubts about whether it was intended to be broadly applicable. Subsequent Sixth Circuit decisions have questioned whether Rohrig stands for the proposition that the community-caretaking exception can justify warrantless entries into private residences. See, e.g., Williams, 354 F3d at 508 (“[Djespite references to the doctrine in Rohrig, we doubt that community caretaking will generally justify warrantless entries into private homes.”).

 Ray v Warren Twp, 626 F3d 170, 177 (CA 3, 2010).

 See, e.g., Ortiz v State, 24 So 3d 596, 615 (Fla App, 2009) (Orfinger, J., dissenting) (“Other than situations involving the medical emergency exception, until today, the community caretaker exception has not been applied in Florida as a separate exception to the Fourth Amendment to validate an entry into a residence.”).

 See, e.g., State v Ford, 2010 VT 39, ¶¶ 11-21; 188 Vt 17, 24-29; 998 A2d 684 (2010) (recognizing the existence of both the communitycaretaking and emergency-aid exceptions, but holding an officer’s entry into a private residence unconstitutional because it failed to satisfy the emergency-aid exception).

 United States v Quezada, 448 F3d 1005 (CA 8, 2006).

 Id. at 1007, citing Mincey, 437 US at 392-393 (emphasis added).

 Tyler, 436 US 499; Mincey, 437 US 385; see also Ray, 626 F3d at 176 (stating that Quezada and similar cases “do not simply rely on the community caretaking doctrine established in Cady”).

 See, e.g., Deneui, 2009 SD 99, at ¶ 80; 775 NW2d at 251-252 (Meierhenry, J., dissenting) (distinguishing cases cited by the majority as grounded in the emergency and emergency-aid exceptions, not a broader community-caretaking exception).

 Ante at 327.

 Ante at 327.

 Ante at 326.

 See Deneui, 2009 SD 99, at ¶ 80; 775 NW2d at 251-252 (Meierhenry, J., dissenting) (“[T]he community caretaking function of police is an aspect of the emergency exception and emergency aid exception. The community caretaker exception, however, is an independent and broader exception to the Fourth Amendment and has not been expansively recognized by any authority outside of the context of motor vehicles.”).

 See Laney v State, 117 SW3d 854, 860-861 (Tex Crim App, 2003):
The notion that officers act pursuant to their “community caretaker functions” serves as a basis for three separate doctrines created by the [United States] Supreme Court:
1) the emergency aid doctrine, established in Mincey;
2) the automobile impoundment and inventory doctrine, first conceived in Cady, and later expanded upon in Opperman; and,
3) the community caretaking doctrine, or public servant doctrine, established in Cady, and followed by this Court.... *347 The common, thread in each of these three exceptions to the warrant and probable cause requirements is the officer’s purpose.
The emergency doctrine is not the same as the community caretaking doctrine established in Cady. The distinction between the emergency doctrine and the community caretaking doctrine, hereinafter referred to as the Cady doctrine, is a narrow, but critical one. Under the emergency doctrine, the officer has an immediate, reasonable belief that he or she must act to “protect or preserve life or avoid serious injury.” On the other hand, under the Cady doctrine, the officer “might or might not believe there is a difficulty requiring his general assistance.” Therefore, while both doctrines are based on an officer’s reasonable belief in the need to act pursuant to his or her “community caretaking functions,” the emergency doctrine is limited to the functions of protecting or preserving life or avoiding serious injury. Additionally, the Cady doctrine deals primarily with warrantless searches and seizures of automobiles (and will be limited to those circumstances except in unusual circumstances), while the emergency doctrine deals with warrantless entries of, but is not limited to, private residences. [Citations omitted.]

 See Davis, 442 Mich at 25-26 (“[P]olicemay enter a dwelling without a warrant when they reasonably believe that a person within is in need of immediate aid. They must possess specific and articulable facts that lead them to this conclusion.”); Toohey, 438 Mich at 284 (“To be constitutional, an inventory search must be conducted in accordance with established departmental procedures, which all police officers are required to follow, and must not be used as a pretext for criminal investigation.”).

 Thus, although the majority claims that it is not reaching this question, see ante at 326, 329 n 60, the dicta from its opinion are loud and clear.

 Under the majority’s new exception, state actors never need rely on the aforementioned exceptions, as the new community-caretaking exception will always make their warrantless entry reasonable under such circumstances. Surely the unanimous Davis Court did not think it was wasting its time in carefully crafting a standard for applying the emergency-aid exception.

 The majority acknowledges that “the threshold of reasonableness is at its apex when police enter a dwelling pursuant to their community caretaking functions.” Ante at 316. However, nothing else in its analysis gives any effect to this crucial distinction.

 Katz, 389 US at 357. The specifically established and well-delineated emergency-aid exception has existed in Michigan since at least 1991, see Ohlinger, 438 Mich 477. As previously explained, there is no Michigan authority specifically adopting a community-caretaking exception. Moreover, the community-caretaking exception established in Cady has not been specifically established, let alone well delineated, outside the context of automobile searches.

 Davis, 442 Mich at 25 (“While categorizing these different activities under the heading of ‘community caretaking functions’ may he useful in some respects, it does not follow that all searches resulting from such activities should be judged by the same standard.”).

 I agree with the majority that there is no indication that Davis intended to depart from “the universal application of the reasonableness standard to all Fourth Amendment inquiries!.]” Ante at 328 n 59. But as the majority notes, Davis established a specific standard for how courts could assess reasonableness in the emergency-aid context. The majority today applies a similar standard to assess the reasonableness of entries in emergency situations, such as to abate an imminent threat of fire. However, the majority errs when it grounds its decision in the community-caretaking exception because it gives no equivalent standard applicable to warrantless entries to perform nonemergency communitycaretaking functions.
The majority claims that any such standard would he dictum because the only question here is whether a firefighter may enter a home to address the threat of an imminent fire. This would be an adequate response if the majority were applying the emergency exception, but not when it creates a new community-caretaking exception. Surely we need not decide the reasonableness of every possible emergency police officers or firefighters may encounter. However, as previously noted, the majority’s decision is based on a new community-caretaking exception without a standard in the event of a nonemergency. The majority leaves lower courts to guess when other, less urgent community-caretaking functions can reasonably justify warrantless entries and searches of homes. Our lower courts and the public deserve more.

 See ante at 319 (“Tyler’s holding and rationale lead inexorably to the conclusion that the community caretaking exception applies to firefighters.”).

 I do not dispute that firefighters, as well as police officers, could also invoke the emergency-aid exception to justify a warrantless entry into a home.

 Even Tunner did not consider the situation in her townhouse to be an imminent hazard. She first attempted to contact her next-door neighbor and the management company to address the water issue. Only when the management company told her there was nothing it could do did Tunner call the fire department.

 See, e.g., Welsh, 466 US at 750, citing Payton, 445 US at 586.

 Welsh, 466 US at 749-750, quoting United States v United States Dist Court, 407 US 297, 318; 92 S Ct 2125; 32 L Ed 2d 752 (1972).

 See Decker, Emergency circumstances, pp 480-484.

 Ante at 323.